

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-1996

# Bethel v. McAllister Bros Inc

Precedential or Non-Precedential:

Docket 95-1436

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Bethel v. McAllister Bros Inc" (1996). *1996 Decisions.* Paper 199.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/199

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-1436


JOHN BETHEL

v.

MCALLISTER BROTHERS, INC.;
FRANK J. HUESSER

Thomas Bethel, as
Administrator of the
Estate of                                          John
Bethel,

Appellant


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 91-02032)


Argued January 30, 1996

BEFORE:  GREENBERG, NYGAARD, and LAY,* Circuit Judges

(Filed: April 17, 1996)


Patrick J. O'Connor (argued)
Thomas G. Wilkinson, Jr.
James E. Brown
Cozen and O'Connor
The Atrium
1900 Market Street
Philadelphia, PA  19103

Attorneys for Appellant

1

*Honorable Donald P. Lay, Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

James F. Young (argued)
Donna L. Adelsberger
Krusen Evans and Byrne
601 Walnut Street
The Curtis Center, Suite 1100
Philadelphia, PA  19106

Attorneys for Appellee
McAllister Brothers, Inc.

Stephen J. Cabot
Maria L. Petrillo (argued)
Brian P. Kirby
John A. Gallagher
Harvey, Pennington, Herting
    & Renneisen, Ltd.
Eleven Penn Center
1835 Market Street, 29th Floor
Philadelphia, PA  19103

Attorneys for Appellee
Frank J. Huesser

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I.  THE HISTORY OF THE CASE

This matter is before this court on appeal following proceedings having an unusual procedural history.  Appellee, McAllister Brothers, Inc., is a tugboat operator on the Delaware River in the Philadelphia area.  McAllister employed John Bethel as a river docking pilot between December 1987 and December 1990, when it discharged him.  Thereafter, Bethel brought this action against McAllister in the district court but he died after the trial.  Consequently, Thomas Bethel, the administrator of his

2

estate, is now the appellant. Our references to "Bethel" in this opinion, however, are to John Bethel.

Bethel alleged in the complaint that he sustained personal injuries on December 17, 1990, while working as a docking pilot for McAllister, which shortly thereafter wrongfully discharged him. He also contended that McAllister defamed him by asserting that it fired him because he refused to take a drug test after his injury, thereby suggesting that he was a drug user and hindering his efforts to obtain employment in the maritime and shipping industry. In addition to McAllister, Bethel sued appellee Frank J. Huesser, a supervisor at McAllister, charging that he was also liable for these alleged wrongs. Bethel obtained a judgment for his personal injuries under the Jones Act, 46 U.S.C. § 688, which McAllister satisfied, and McAllister obtained a judgment as a matter of law on the wrongful discharge claim, which is not at issue on this appeal. Inasmuch as we are not concerned with these claims, and because Huesser's presence in this litigation in no way affects our disposition of the issues, as a matter of convenience we will treat this case as simply a defamation action between Bethel, succeeded by the appellant, and McAllister. Of course, we nevertheless have considered the arguments Huesser set forth both in his brief and at oral argument.

At the trial, Bethel recovered a judgment for $554,000 in compensatory damages and $250,000 in punitive damages on the defamation claim. McAllister then successfully moved for a judgment as a matter of law under Fed. R. Civ. P. 50(b). The

3

court concluded that the other towing companies in the Philadelphia area, which Bethel alleged would not hire him after McAllister discharged him, did not understand McAllister's statements as indicating that Bethel was a drug user, and further concluded that Bethel failed to prove that McAllister's statements caused him "special harm" as required by Pennsylvania law which is applicable to the defamation issues in this action. Agriss v. Roadway Express, Inc., 483 A.2d 456, 461 (Pa. Super. Ct. 1984); see also Solosko v. Paxton, 119 A.2d 230, 232 (Pa. 1956).

Bethel then appealed, but before we could hear and decide the appeal, he died on December 4, 1993, so appellant was substituted for him as a party. On February 4, 1994, over a dissent, in an unreported opinion we reversed the order granting the judgment as a matter of law and remanded the case for entry of a judgment in favor of the appellant. Bethel v. McAllister Bros., Inc., No. 93-1358 (3d Cir. Feb. 4, 1994). We found that there was sufficient evidence that McAllister had defamed Bethel to support the jury's verdict. Furthermore, we concluded that there was evidence that he had suffered special harm because Riverbus, Inc., a ferry operator that employed him after McAllister discharged him, terminated that employment when it learned from McAllister that it had discharged him for refusing to take a drug test.[0] In reaching this result, we relied on

---

[0] In our earlier opinion we pointed out that we probably could sustain the verdict on the ground that McAllister's statements constituted slander per se, thus obviating the need for a showing of special harm. Appellant, though noting this point in his

4

Bethel's testimony that Riverbus fired him when it acquired that information in a background check. We also indicated that the award of compensatory damages was predicated, at least in part, on Riverbus having fired him. On April 12, 1994, the district court entered judgment in favor of Bethel against McAllister in accordance with our mandate.

On March 1, 1994, McAllister moved in the district court for relief from the judgment to be entered on the remand pursuant to Fed. R. Civ. P. 60(b)(3), relying on evidence that it discovered after we reversed the judgment in favor of McAllister to establish that Bethel committed fraud at the trial.[0] The evidence was Bethel's testimony in an arbitration proceeding against Riverbus after it discharged him. Bethel testified in that proceeding that Riverbus discharged him for a myriad of reasons, of which his refusal to take the drug test as directed by McAllister was but one.

The district court granted McAllister's motion in an opinion and accompanying order, both dated July 11, 1994. The court found that Bethel had given "patently misleading" testimony and had "knowingly concealed a material fact" at the trial and thus had committed fraud. Consequently, the court vacated the judgment of April 12, 1994, and granted McAllister a new trial on both liability and damages. Thereafter, at appellant's request,

_____

brief, does not rely on it in an effort to overturn the order he challenges on this appeal.

[0] McAllister also asserted bases for the motion under Fed. R. Civ. P. 60(b)(2) and (6), which the district court rejected and which are not implicated on this appeal.

5

the district court amended the order of July 11, 1994, by certifying it under 28 U.S.C. § 1291(b) so that he could seek leave to appeal. We, however, denied leave to appeal on September 19, 1994. In the meantime, the appellant sought reconsideration of the order of July 11, 1994, with respect to the scope of the retrial, which he argued the court should have limited to damages. The district court, by order entered December 13, 1994, adhered to its decision that the new trial would be on both liability and damages.

The appellant did not wish to retry the case, as he had concluded that in light of the district court's findings that Bethel had committed perjury,[0] he could not succeed in a retrial. Thus, in his view, the order granting a new trial effectively awarded McAllister a final judgment. Therefore, at a conference on November 3, 1994, the appellant requested that the court enter a final judgment in McAllister's favor so that he could appeal the granting of the new trial. The court, though acknowledging that the appellant was in a difficult position, did not do so. In this regard we are perplexed by the appellant's articulated concerns because we can conceive of no way that the jury at a retrial could have learned of the district court's conclusion that Bethel had committed perjury, though we can understand how McAllister might have been able to use Bethel's testimony from the arbitration hearing at the retrial, particularly if appellant

---

[0]The district court did not use the term "perjury" in describing Bethel's testimony in its July 11, 1994 opinion, but the parties have characterized its ruling as finding that Bethel had committed perjury. Therefore we, too, use that term.

6

used Bethel's testimony from the first trial at a second trial. We explored the point at oral argument and appellant's attorney acknowledged that the district court never said that its holding under Rule 60(b)(3) somehow would be made known to the jury at the new trial.

In any event, appellant persisted in his efforts to have a final judgment entered in McAllister's favor. In a motion filed January 27, 1995, he reiterated that such a judgment should be entered because he could not proceed and wished to appeal immediately. The district court instead listed the case for trial. Appellant then unsuccessfully moved again for entry of judgment.

Ultimately, the case came on for trial on April 27, 1995. At that time, appellant was free to proceed with the trial but did not do so. Accordingly, the district court entered a final judgment against him, but did not do so on the ground that its opinion and order of July 11, 1994, granting relief under Fed. R. Civ. P. 60(b)(3), effectively had been a final judgment. Rather, as the court recited in its order of April 28, 1995, it dismissed the matter because of appellant's "failure to prosecute" the case. Appellant then appealed from the orders of July 11, 1994, December 13, 1994, and April 28, 1995.[0]

---

[0] The district court exercised federal question and diversity jurisdiction. While the complaint recites that the court could exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the defamation claim because it had federal question jurisdiction under 28 U.S.C. § 1331, and admiralty and maritime jurisdiction under 28 U.S.C. § 1333, this assertion is questionable. See Lyon v. Whisman, 45 F.3d 758 (3d Cir. 1995). However, the diversity

7

II.  THE SCOPE OF THE APPEAL

We initially address an objection raised by McAllister to our entertaining this appeal.  In its brief, McAllister urges that appellant "has Waived his right to Appeal the July 11, 1994 and December 1[3], 1994 Orders [granting a new trial] by Failing to Prosecute his Case at the Second Trial of this Action."  McAllister seemed to believe, however, that appellant could and did appeal from the order of dismissal, as it did not suggest that he could not appeal from it and it supported the dismissal on the merits.[0]

We understand why McAllister concluded that appellant might be seeking a reversal of the order of dismissal.  After all, the notice of appeal recites that appellant is appealing from that order.  Furthermore, his brief sets forth the standard of review for orders of dismissal citing, inter alia, Titus v. Mercedes Benz of N. Am., 695 F.2d 746, 749 (3d Cir. 1982), and indicates that we can reverse the district court if it abused its discretion in dismissing the case.  Brief at 28.  Yet it did not appear clear to us from his overall brief that appellant was challenging the dismissal of the case or was seeking a new trial, for at the conclusion of his brief he requested that we reverse only the orders of July 11, 1994, and December 13, 1994, and enter judgment in his favor.

---

jurisdiction was sufficient for the court to hear the case.  We exercise jurisdiction under 28 U.S.C. § 1291.
[0]Huesser makes the same contentions.

8

We explored this ambiguity at oral argument and inquired whether appellant was seeking a new trial. The answer was absolutely clear: his attorney stated that this was an all-or-nothing appeal in which appellant was seeking only the reinstatement of the judgment predicated on the verdict. Thus, regardless of how we decided the appeal our decision would end the case, either because the judgment entered on the verdict would be reinstated or because appellant would not proceed with a new trial as permitted by the district court in its orders of July 11, 1994, and December 13, 1994. Consequently, we need not decide whether we should uphold the order of dismissal, as appellant does not challenge that order.

McAllister predicates its contention that appellant waived his right to appeal from the July 11, 1994 and December 13, 1994 orders principally on three cases, Spain v. Gallegos, 26 F.3d 439 (3d Cir. 1994); Sullivan v. Pacific Indemn. Co., 566 F.2d 444 (3d Cir. 1977); and Marshall v. Sielaff, 492 F.2d 917 (3d Cir. 1974). In Spain, a female employee of the Equal Employment Opportunity Commission brought a district court action against the EEOC, charging sexual and racial discrimination, sexual harassment and unlawful retaliation. Immediately prior to the trial, the district court excluded certain evidence which the employee intended to offer in support of her sexual discrimination and harassment claims and barred her from proceeding on those claims on the basis of her remaining evidence. Nevertheless, the employee was free to proceed with her claims for racial discrimination and retaliation. But she

9

declined to do so, as she regarded the excluded evidence as closely connected to those claims. The court then dismissed her case to the extent it was predicated on these remaining claims.

We held that the district court abused its discretion in excluding the disputed evidence and we reversed the order dismissing the sexual discrimination and harassment claims. Nevertheless, we affirmed the dismissal of the racial discrimination and retaliation claims, as the employee "was obliged to proceed with the trial notwithstanding the exclusion of the evidence." 26 F.3d at 454. In reaching this conclusion, we explained that "[a] party disappointed with a court's ruling may not refuse to proceed and then expect to obtain relief on appeal from an order of dismissal or default." Id.

Spain clearly is distinguishable from this case. In that case the employee, though refusing to proceed with a trial though free to do so, later sought relief from the order entered as a consequence of her refusal to go forward. This case is different because while the appellant, like the employee in Spain, would not go forward with the trial he, unlike the employee in that case, does not seek to be relieved of the consequences of his failure to proceed. Quite to the contrary, he does not now seek a trial but argues only that a new trial should not have been granted.

Sullivan, 566 F.2d 444, is somewhat like Spain. There the plaintiffs sought to bring a class action against an insurance company predicated on a claim that it overcharged certain physicians for malpractice insurance. The named

10

plaintiffs moved to certify a class of plaintiffs, but on the day of trial the district court denied the motion to certify. The plaintiffs then refused to present any evidence, whereupon the court dismissed the action for failure to prosecute.

The plaintiffs then appealed, seeking only a review of the order denying class certification, as they did not contend that the dismissal was erroneous. Id. at 445. In these circumstances, we held that the plaintiffs had appealed from an interlocutory order, and dismissed the appeal for want of jurisdiction. Sullivan differed from Spain in one respect, however, because in the latter case the employee urged that the district court improperly dismissed the balance of the case for failure to prosecute after it entered the earlier order to which the employee objected. Thus, in Spain, unlike in Sullivan, we did not dismiss the appeal and instead affirmed the district court's order dismissing the case for failure to prosecute.

Sullivan does not support McAllister's contention that we lack jurisdiction to consider the appeal from the orders of July 11, 1994, and December 13, 1994. In Sullivan, the order denying the motion to certify the class was interlocutory because a reversal of it would not have ended the litigation, as the certification of the class would have been a futile gesture unless the plaintiffs could proceed to trial. Thus, in Sullivan, unlike in this case, a reversal of the order denying certification and predating the dismissal would have resulted in further litigation, which would have required reinstatement of

11

the action.  Here, a reversal, no less than an affirmance, would end this litigation.

Marshall, 492 F.2d 917, is also similar to Spain.  In Marshall, a prisoner who brought a civil rights action under 42 U.S.C. § 1983 against prison officials and medical personnel at the prison, would not proceed with the trial after the district court refused to grant a writ of habeas corpus ad testificandum for certain persons the prisoner desired to call as witnesses at the trial.  The district court dismissed the action for failure to prosecute, whereupon the prisoner appealed from both the dismissal and the denial of the writ.  We affirmed the dismissal for lack of prosecution but would not reach the issues generated by the court having denied the application for the writ, pointing out that "[i]f a litigant could refuse to proceed whenever a trial judge ruled against him, wait for the court to enter a dismissal for failure to prosecute, and then obtain review of the judge's interlocutory decision, the policy against piecemeal litigation and review would be severely weakened."  Id. at 919.

Yet Marshall, too, is distinguishable from this case.  In Marshall, as in Sullivan, the appellant wished to appeal an order prior to the final order as a prelude to further litigation.  Furthermore, in Marshall, as in both Spain and Sullivan, the appellant could obtain meaningful relief in the action only if the order of dismissal was vacated or reversed and there then was a trial on the merits.

Our decisions in Spain, Sullivan, and Marshall, of course, fundamentally were premised upon the federal policy

against piecemeal appeals, codified in the final judgment rule of 28 U.S.C. § 1291. See Carr v. American Red Cross, 17 F.3d 671, 678 (3d Cir. 1994) ("The finality rule 'reflects federal policy against piecemeal appeals.'") (quoting Praxis Properties, Inc. v. Colonial Sav. Bank, 947 F.2d 49, 54 n.5 (3d Cir. 1991)). Section 1291 provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States." While we give "a practical rather than technical construction" to section 1291, we must take care not to sacrifice the policy of limited appellate jurisdiction. Id. (citing Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1156 (3d Cir. 1986), cert. denied, 481 U.S. 1070, 107 S.Ct. 2463 (1987)). With limited exceptions, we will not entertain an appeal unless the district court's order "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." Digital Equip. Corp. v. Desktop Direct, Inc., 114 S.Ct. 1992, 1995 (1994) (citations and internal quotation marks omitted); Byrant v. Sylvester, 57 F.3d 308, 311 (3d Cir. 1995). That standard permitting appellate review has been met here. If we set aside the district court's orders of July 11, 1994, and December 13, 1994, appellant will be entitled to entry of a judgment in his favor, and if we affirm the orders, by his own stipulation, he will not be entitled to a trial. In contrast to the situations raised by the appeals in Spain, Sullivan, and Marshall, the litigation would be terminated in either case. Consequently we are persuaded that notwithstanding

their original character, the orders of July 11, 1994, and December 13, 1994, are final and appealable.

In this regard, we observe that it is well established that otherwise non-appealable orders may become appealable where circumstances foreclose the possibility of piecemeal litigation. For example, an order dismissing a complaint without prejudice is ordinarily not appealable. Where, however, the plaintiff cannot cure the defect in the complaint or elects to stand on the complaint without amendment, the order becomes final and appealable. See Welch v. Folsom, 925 F.2d 666, 668 (3d Cir. 1991); see also Umbenhauer v. Woog, 969 F.2d 25, 30 n.6 (3d Cir. 1992) (holding that order of dismissal without prejudice was appealable where counsel informed court of appeals at oral argument that statute of limitations had run). Indeed, the orders in this case have even greater indicia of finality than an appealable order dismissing a complaint without prejudice as their reversal, unlike the reversal of an order dismissing a complaint without prejudice, will not lead to a trial in the district court.[0]

Moreover, an otherwise non-appealable order may become final for the purposes of appeal where a plaintiff voluntarily and finally abandons the other claims in the litigation. See Fassett, 807 F.2d at 1155-57. In Fassett, for example, the

---

[0] We recognize that in some cases a reversal might lead to further proceedings regarding whether relief should have been granted under Rule 60(b)(3), see Stridiron v. Stridiron, 698 F.2d 204, 208 (3d Cir. 1983), but even if there were such a reversal here it would not lead to further proceedings addressing the merits of the case as appellant has abandoned his right to a new trial.

14

district court granted summary judgment in favor of all the defendants save one in a diversity action. Choosing not to proceed to trial against the remaining defendant, the plaintiffs voluntarily dismissed their complaints against him. Id. at 1154. On appeal, we held that the summary judgments were appealable for two independent reasons. First, we found that the statute of limitations had run on the plaintiffs' claims against the remaining defendant at the time of the dismissals. Id. at 1155. Second, the plaintiffs represented at oral argument that they would not pursue their claims against the remaining defendant in the federal courts. Id. at 1156-57. In either case, there were no outstanding issues or parties remaining in the district court so that we had jurisdiction over the appeal. Id. at 1155, 1157. We explained that "it would be anomalous to hold that a plaintiff had no right to appeal the dismissal of all but one of his claims after that one claim not initially dismissed, had thereafter been voluntarily and finally abandoned." Id. at 1155. See also Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991) (holding that settlement agreements between plaintiffs and three of four defendants were appealable where plaintiffs renounced claims against fourth defendant at oral argument).[0]

---

[0] Al-Torki v. Kaempen, ____ F.3d ____, 1996 WL 89101 (9th Cir. Mar. 5, 1996), which Judge Nygaard cites is factually distinguishable because there the appellant challenged an order for a new trial after the original trial as well as the subsequent order dismissing his complaint when he did not proceed at the new trial. Thus, while he challenged the district court order granting a new trial, unlike appellant he sought a new trial himself in the event that the court of appeals upheld the district court's order granting a new trial. Furthermore, Al-Torki involved an appeal from an order for a new trial under

15

We note a persuasive analogy in this case to our review of orders granting a new trial pursuant to Fed. R. Civ. P. 59. Like the grant of a Rule 60(b) motion, an order granting a new trial under Rule 59 ordinarily is interlocutory and non-appealable. National Passenger R.R. Corp. v. Maylie, 910 F.2d 1181, 1183 (3d Cir. 1990) ("When an order granting a Rule 60(b) motion merely vacates the judgment and leaves the case pending for further determination, the order is akin to an order granting a new trial and in most instances, is interlocutory and nonappealable."). The grant of a new trial under Rule 59, however, does not escape review. On appeal following the new trial, we will review the order and may reinstate the judgment from the first trial if we find that the new trial should not have been granted. Blancha v. Raymark Indus., 972 F.2d 507, 511-12 (3d Cir. 1992). In this case, it is as if the appellant were

---

Fed. R. Civ. P. 59 rather than an appeal from an order for a new trial under Fed. R. Civ. P. 60(b)(3) following the vacation of a judgment on a post-trial motion for relief from a judgment. Judge Nygaard notes, typescript at 6 n.1, "[a]nalytically, [a] second trial held after grant of a new trial under Fed. R. Civ. P. 59 can be viewed as a continuation of the first." But his support for this statement comes from 15B Charles A. Wright, Federal Practice and Procedure § 3915.5 at 299 (2d ed. 1992) which indicates that "[n]ew trial orders can be seen as part of the original and ordinary trial process." However, this characterization does not apply to a new trial ordered following the vacation of a judgment under Fed. R. Civ. P. 60(b)(3) which certainly is not part of the "original and ordinary trial process." Yet to a degree Al-Torki does support Judge Nygaard's position on this appeal. Nevertheless we believe that our result is correct for the reasons we have set forth. In fact, inasmuch as allowing the appeal on the limited issues which appellant raises does not offend principles of finality, we could justify dismissal of the appeal only as a sanction for appellant's failure to prosecute the case at the retrial. We see no reason for such a sanction as appellant is not seeking a new trial.

16

challenging the grant of a new trial after an adverse judgment in the second trial. The appellant is essentially willing to concede defeat in the second trial and to rest his success or failure completely on the outcome of our review of the district court's order granting a new trial under Rule 60(b).

Finally, we point out that the order of dismissal does not preclude us from reviewing the orders of July 11, 1994, and December 13, 1994, even though the dismissal terminated the case in the district court and is not being reviewed. The appeal here is similar to an appeal from an order entered prior to a remand of a case by a district court to the state court from which the case had been removed. In such a case, an order entered prior to remand may be appealable even though the order of remand itself may not be appealable. See Aliota v. Graham, 984 F.2d 1350, 1353 (3d Cir.), cert. denied, 114 S.Ct. 68 (1993). The sequence of events is the same here. The July 11, 1994, and December 13, 1994 orders predated the order of dismissal. Of course, we do not go so far as to hold that orders entered before dismissal always are appealable after a dismissal. Sullivan demonstrates that they are not. Rather, we confine ourselves to the unique circumstances here in which a reversal of the earlier order would mean that the proceedings leading to the dismissal never should have been held. Other factual scenarios may lead to different results. Overall, we are satisfied that we have jurisdiction to review the July 11, 1994 and December 13, 1994 orders, and thus we reach the merits of this appeal.

17

III. THE MERITS

In discussing the merits, we first summarize the district court's comprehensive opinion of July 11, 1994. In that opinion, the court set forth the procedural background of the case and then described the facts. It indicated that Bethel had been injured on McAllister's vessel on December 17, 1990, when he fell down a flight of stairs. The following day, McAllister told Bethel to report to work to submit to a drug test that it claimed was being administered to all its river docking pilots that day. Bethel refused to report because he was unable to do so. On December 21, 1990, McAllister told Bethel that his employment was terminated, and he received a letter to that effect the following day.

Thereafter, rumors circulated in the Delaware River maritime community that McAllister terminated Bethel's employment because he was a drug user. Bethel never again obtained full-time employment as a river docking pilot, although Riverbus, a New Jersey ferry operator, employed him as a captain operating boats between Camden and Philadelphia from March 25, 1992, until June 28, 1992. His Riverbus employment ended about three weeks before the trial in this case, which was from July 21, 1992, through July 27, 1992. Bethel testified that Riverbus fired him as the result of a background check, which he understood to mean that McAllister told Riverbus about Bethel's refusal to take the drug test.

The district court indicated that McAllister sought relief from the judgment on remand under Fed. R. Civ. P. 60(b)(3)

18

because of Bethel's fraud.  In particular, the alleged fraud was that Bethel did not testify truthfully about the reasons Riverbus gave him for his discharge as Bethel, at an arbitration hearing in a proceeding against Riverbus ten months after the trial in this case, said Riverbus gave him additional reasons for his discharge.  The district court also pointed out that, as we recognized in the earlier appeal, Bethel claimed three possible sources of lost earnings in this case, full-time docking pilot work, part-time docking pilot work, and the position at Riverbus which paid $37,000 per year.  However, any claim based on loss of income from the first source was weak.

The district court compared Bethel's testimony at the jury trial on July 21, 1992, in this case, with his arbitration testimony ten months after the trial on May 17, 1993.  At the jury trial, Bethel had testified that Riverbus told him that it was terminating his employment "due to an unsatisfactory background check" and he then explained that "[w]hat was told to me, is that they had called my previous employer and they had become aware that allegedly I refused to take a drug test.  Therefore they did not -- they would not have me in their employ."  Yet, at the arbitration hearing Bethel testified that on June 23, 1992, Riverbus gave him eight reasons why it was terminating his employment, which the district court in a fair characterization of his testimony at the arbitration hearing described in its July 11, 1994 opinion as follows:  "(1) a bad background check, that included talking to McAllister, who told [Riverbus] that plaintiff refused to take a drug test; (2) having

19

been fired by former employers for being drunk; (3) failing to draw up a schedule for crew assignments; (4) reporting to work drunk; (5) not conducting a fire drill; (6) being late for work; (7) failure to get along with fellow employees; and (8) improperly changing the logs."

The court pointed out that the reasons that Riverbus gave Bethel for discharging him must have been fresh in his mind when he testified at the jury trial, as Riverbus had given them to him only three weeks earlier. Despite this fact, the court then indicated that it now knew in light of Bethel's testimony at the arbitration hearing that his "testimony given to the jury was patently misleading as to the reasons for his being discharged from Riverbus. A review of the versions of the testimony at both the trial and the arbitration discloses that [Bethel] only told the jury one of the reasons given for his firing. This turned out to be the reason the Third Circuit would later cite as the strongest evidence of his damages, in an otherwise 'weak' case." The court concluded that if the jury knew about the additional reasons Riverbus gave Bethel for the discharge, it could have found that Bethel's failure "to take the drug test for defendant McAllister had little or nothing to do with the equally or more substantial ground advanced by Riverbus" for the discharge. The court concluded that Bethel "knowingly concealed a material fact -- indeed, seven material facts, being the undisclosed other grounds -- for being discharged by Riverbus."

The court discussed numerous precedents under Rule 60(b), but naturally in the inherently fact-specific inquiry

20

triggered by a Rule 60(b)(3) motion, all differed on the facts. The court then said that there "can be no doubt that the withheld information was well within the scope of the question being asked, which foreclosed plaintiff's right to pick and choose those items of truth he preferred the jury to hear." The court indicated that while it is possible that McAllister's attorney could have cross-examined Bethel about the reasons for the firing more extensively than he did, the attorney's methods were understandable as Riverbus terminated Bethel long after discovery had been closed and only three weeks before trial. The judge indicated that Bethel's testimony was the only basis for the $554,000 award and that the jury had been told that Bethel who was 37 years old was earning $37,000 annually at Riverbus. In these circumstances, the court held that McAllister was entitled to a new trial. Furthermore, the trial was to be on both liability and damages because Bethel's testimony regarding what Riverbus told him was relevant on both issues.

We use the abuse of discretion standard in reviewing the district court's orders under Rule 60(b)(3). Central W. Rental Co. v. Horizon Leasing, 967 F.2d 832, 836 (3d Cir. 1992). In this review, we ascertain whether the misconduct prevented McAllister from fully and fairly presenting its defense. See Stridiron v. Stridiron, 698 F.2d 204, 206-07 (3d Cir. 1983).

We cannot say that the district court abused its discretion in granting the new trial. In addition to the patent inconsistency between Bethel's trial testimony and arbitration testimony that we already have noted, there were other

21

inconsistencies between his trial and arbitration evidence.  At trial, Bethel testified that Riverbus gave him a letter dated June 24, 1992, which stated that "due to unsatisfactory background check, that I was to be put on probation for the rest of my life."  In fact, the letter, which was not produced at trial, said "that an unsatisfactory background check and performance rating has been given to Captain John Bethel and that [he] is placed on probationary status until further notice."[0] Furthermore, as the district court noted, Bethel also testified at the arbitration hearing that Riverbus told him on June 28, 1992, the date it actually discharged him, that it was doing so because he "refused to take a drug test in McAllister's and . . . didn't show up for work on the weekend."  In the circumstances, it is perfectly clear that Bethel created a false impression that Riverbus told him that his difficulties arising from McAllister's discharge of him cost him his job at Riverbus, whereas he knew that Riverbus had told him that much more was involved.

This misrepresentation was not merely material to his case.  It was crucial.  Indeed, on the first appeal, though we reversed the district court's order granting McAllister a judgment in its favor under Rule 50(b), we characterized Bethel's case as "thin" and described aspects of it as "not . . . strong" and "weak."  Indeed, it was so thin that the district court felt

---

[0]In the appellant's reply brief, he contends that we should not rely on this letter as it was not in evidence before the district court and the court did not rely on the letter.  We reject this contention as the district court did rely on the letter, quoting it in full.

22

that the verdict could not stand and, on the first appeal, one judge of this court agreed with him.  The misrepresentation thus buttressed a weak case and was almost certainly the basis for the award of damages, as we cannot understand how the jury could have settled on its large award of compensatory damages, except on the basis of Bethel's loss of earnings attributable to Riverbus's discharge.  Clearly, by concealing the actual reasons Riverbus gave him for his discharge, Bethel prevented McAllister from fully and fairly presenting its defense, as these events took place after discovery was closed and immediately before the trial.

We acknowledge that it is less clear that the misrepresentation was responsible for the verdict on liability, though it well may have been, as it is possible that the jury might have believed that Riverbus had not discharged Bethel because it believed him to be a drug user if it knew that Riverbus gave Bethel additional reasons for discharging him.  In any event, in view of the appellant's concession that he does not want a new trial, any uncertainty of the consequence of the perjury on the verdict of liability does not matter, as a finding of liability without an opportunity for a damages trial would be of no use to him.  As we have indicated, appellant made it clear at oral argument that the only relief he wanted on this appeal was a reinstatement of the verdict in Bethel's favor and entry of a judgment on it.[0]  In these circumstances, we need not explore

---

[0] This concession is understandable since Bethel's arbitration proceeding against Riverbus resulted in a decision after the

the possibility that even if we held that the district court should have limited its order for a new trial to a trial on damages, the line of cases culminating in <u>Spain</u>, which we discussed above, would preclude appellant from proceeding with the case on the theory that he refused to proceed on a trial which would have included damages, when he had an opportunity to do so.[0]

IV.   CONCLUSION

For the foregoing reasons, we will affirm the orders of July 11, 1994, and December 13, 1994, and will dismiss the appeal to the extent that appellant recited in his notice of appeal that it was taken from the order of April 28, 1995.

---

trial requiring his reinstatement and because Bethel died before the original appeal.  In these circumstances, the damages the appellant could have demonstrated at a retrial surely would have been limited.  Furthermore, a liability trial would have been very difficult for the appellant because there is evidence that Bethel died from an adverse reaction to drug use.  Indeed, his death certificate recites that such a reaction was the cause of death.  Accordingly, while Bethel contended McAllister defamed him by suggesting that he was a drug user, McAllister at a retrial would have been in a position to assert a truth defense.
[0]In some situations, it might be appropriate for a court to conduct a hearing to determine the relevant facts on a motion under Rule 60(b)(3), but in this case that was not necessary because the records of the trial and the arbitration proceeding conclusively demonstrated the fraud and nothing that the appellant produced on the motion in the district court was adequate to trigger a need for a hearing.  See <u>Stridiron</u>, 698 F.2d at 207.

NYGAARD, Circuit Judge, concurring.

The district court, after earlier granting defendants' motion for relief from judgment and ordering a new trial, dismissed the case for failure to prosecute when appellant, who first stated unequivocally that he would present his case, later recanted and expressly refused to proceed to trial. The appellant does not challenge the propriety of the district court's dismissal. Indeed, the majority and I also agree that there was nothing improper about it. Without challenging the propriety of that dismissal, however, appellant asks that we review the underlying interlocutory orders granting a new trial. I would not do so. Unless we can vacate or reverse the dismissal order, the case is over; because that appropriate dismissal lies athwart the way to review all other underlying, interlocutory orders.

Before now we would not review underlying interlocutory orders if the district court did not abuse its discretion by

25

entering judgment for failure to prosecute. See Sullivan v.
Pacific Indem. Co., 566 F.2d 444, 445, (3d Cir. 1977); Marshall
v. Sielaff, 492 F.2d 917, 919, (3d Cir. 1974). See also Spain v.
Gallegos, 26 F.3d 439 (3d Cir. 1994). These cases establish that
a party who tries to obtain appellate review of otherwise
interlocutory orders by refusing to proceed to trial engages in
an impermissible strategy.

We established this narrow scope of review for three
reasons: first, there is a presumption of propriety for court
orders -- they are enforceable unless stayed or reversed; second,
to avoid piecemeal litigation -- because, as we recognize, the
results of the new trial may well cure complaints about the
interlocutory orders; and third, to vindicate and encourage
proper respect for the district court's authority -- because, we
simply cannot allow counsel to flout proper orders of the
district courts. The majority cannot overturn our precedent.
Instead, it creates an exception to our holdings in Spain,
Sullivan, and Marshall, which is both unnecessary and imprudent.
I would not do so. I would affirm the district court's
dismissal, and hence not reach the propriety of the interlocutory
orders.

I.

Appellant incorrectly theorizes that a decision
granting a new trial is always reviewable after any subsequent
judgment. In Blancha v. Raymark Indus., 972 F.2d 507 (3d Cir.
1992), we held that:

26

> [w]hile an order granting a new trial is purely interlocutory and thus is not an appealable final order within the meaning of section 1291, such an order is reviewable after a final order is entered <u>following retrial</u>.

Id. at 511-512 (emphasis added).

If, however, there is no retrial because the district court dismisses the case in response to plaintiff's clear and unequivocal refusal to proceed with a second trial, and especially where as here, the appellant does not challenge the dismissal, then the earlier interlocutory order is simply not reviewable. This result is both fair and prudent. Where the dismissal was a sanction, as for failure to prosecute, the case is distinguishable from those cases where the case was properly litigated to a conclusion, and the unsuccessful party then seeks on appeal to challenge the interlocutory order granting a new trial.

<u>Al-Torki v. Kaempen</u>, -- F.3d ---, ---, 1996 WL 89101, *4 (9th Cir. March 5, 1996). We would serve a greater purpose by admonishing counsel to follow proper procedure and to heed the orders of our colleagues on the trial bench, and by requiring that litigants give the system the chance to resolve disputes through trial, rather than allowing them to simply take a dive and then seek relief in the court of appeals.

In <u>Marshall</u>, the plaintiff refused to proceed with trial, and the district court dismissed the case for failure to prosecute. We stated that "the scope of appellate review of an order of dismissal is extremely narrow, confined solely to whether the trial court has abused its discretion." 492 F.2d at 918. Appropriately, we found that the district court did not abuse its discretion:

> Indeed, appellant left the district court no choice. . . . [T]he "proper procedure" was to proceed. . . . The issues in the case may well have been resolved. . . . If appellant had proceeded, he might have been successful.

27

> If appellant had proceeded and lost, the appellate court would have had a complete record upon which to make its determination.
> For these reasons we affirm the dismissal for lack of prosecution and do not reach the substantive issue involving the [underlying ruling] . . . .

Id. at 919.

Marshall emphasized that if we were to review the interlocutory rulings, we would "undermine the ability of trial judges to achieve the orderly and expeditious disposition of cases." Id. What appellant would have us do, and what the majority does, directly undermines the trial court's authority to control the proceedings before it.

In Sullivan, plaintiffs sued an insurance company for a premium refund. Plaintiffs sought class certification, which was denied by the district court on the day of trial. In the face of this ruling, plaintiffs refused to present any evidence. The court then dismissed the case for failure to prosecute. We noted that, since plaintiffs did not contend that the court abused its discretion by dismissing for failure to prosecute, the only matters they presented for review on appeal were the interlocutory class certification decisions. We dismissed for lack of an appealable order. Counsel for appellant, here, made it very clear at oral argument that he does not challenge the district court's discretion in dismissing his case.

In Spain, we faced the situation where, after the district court granted partial summary judgment, the plaintiff refused to proceed on her remaining claims of racial discrimination and unlawful retaliation. She believed (as

28

appellant here mistakenly believes) that the court's previous rulings effectively precluded her from succeeding on her remaining claims. The court appropriately dismissed the remaining claims for failure to prosecute. On appeal, we held that the court did not abuse its discretion in so doing. Spain's refusal to prosecute her remaining claims forever barred any recovery on them. We reasoned that

> [a] party disappointed with a court's ruling may not refuse to proceed and then expect to obtain relief on appeal from an order of dismissal or default.

26 F.3d at 454. Bethel was no less obliged to proceed simply because he had an earlier underlying judgment in his favor.

The majority tries to distinguish <u>Spain</u> on the basis that the appellant here does not seek to be relieved of the dismissal. I believe that he must, however, have the order of dismissal set aside before the interlocutory rulings can be reviewed. The majority, instead, saves appellant (and future appellants like him) from his own sanctionable conduct and grants him an undeserved opportunity to have the judgment from the first trial reinstated. The majority reasons that, because review under our ruling on the merits will end this litigation, the underlying interlocutory orders were transformed into final appealable orders.

This reasoning, while temptingly efficient, does not comport with law or logic. The general rule is that an order granting a new trial becomes reviewable after the second trial (or other judgment entered in the normal course of proceedings).

29

If the second trial is aborted by a dismissal when a litigant refuses to proceed at the moment of trial, the litigant must suffer the consequences of his refusal. I would conclude that Bethel's position, that he need not challenge the dismissal for failure to prosecute, is fatal to his appeal.[0]

Were we simply to affirm this unquestionably proper dismissal order, which I say we must, we would do no injustice to appellant. When the district court informed appellant well before the date of the second trial that, if he refused to proceed, it would dismiss the case for failure to prosecute, the record establishes that the appellant clearly indicated he

---

[0]Analytically, a second trial held after grant of a new trial under Fed. R. Civ. P. 59 can be viewed as a continuation of the first. The new trial order thus merges with the second judgment.

> New trial orders can be seen as part of the
> original and ordinary trial process, to be
> protected against immediate appellate
> intrusion for reasons little different from
> the reasons that preclude direct appeal from
> evidentiary rulings during the course of
> trial. In many cases a retrial can be
> accomplished much more quickly than an
> appeal, and the result may avoid the need for
> any appeal.

15 B Charles A. Wright et al., Federal Practice and Procedure §3915.5 (2d ed. 1992 & Supp. 1995). Although this case involves the grant of a new trial under Fed. R. Civ. P. 60(b)(3), the grant of a new trial under either rule is an unappealable interlocutory order which is afforded review after subsequent judgment. When appeal is taken from a properly obtained judgment in the continued proceedings, if the judgment is inconsistent with the result in the first trial, the appellate court can then determine whether the initial result prevails because the grant of the new trial was error. When, however, the entire case is dismissed for failure to prosecute, unless the court abused its discretion in ordering the sanction, the correctness of any interlocutory decisions is irrelevant and the sanction prevails.

understood the consequences of a judgment for failure to prosecute:  his appeal of the underlying rulings would be barred.

The district court indicated, as we did in Marshall, that if appellant prevailed at the second trial his allegations of error would be cured by results; and if not, he could then appeal.  The court did not demand anything unreasonable from appellant, but required only that he give the system a chance to produce a favorable result under well-established procedure.  And if the court's interlocutory ruling had caused him to lose, he could appeal.  That is how the system works.  Appellant nevertheless chose to quit at a most inopportune time.  We should not save him from his knowing and calculated decision.

The court in Al-Torki, confronted this very issue, and held that an order granting a new trial is unreviewable if the claims are subsequently dismissed for failure to prosecute.  Like appellant, Al-Torki won at the first trial.  After the district court granted defendant a new trial, Al-Torki failed to appear at the second trial, and the district court dismissed the case for failure to prosecute.  Unlike appellant, Al-Torki argued that the district court erred by dismissing for failure to prosecute.

After the appellate court rejected Al-Torki's argument regarding the dismissal, it determined that, as a result of the proper dismissal, the order granting the new trial was unreviewable.  The court opined:

> This case presents a simple refusal to appear at the time set for trial.  Such a willful failure to appear for trial forfeits a litigant's right to appeal interlocutory orders prior to judgment.

31

1996 WL 89101, *5.  Appellant's conduct here was no less willful. The result and reasoning in Al-Torki is sound, and it is consistent with our jurisprudence.

                                   II.

        I fully recognize that a litigant who has succeeded in a first trial may not want to fight the battle again, and that the rule denying immediate review of an order granting a new trial places burdens on the originally successful litigant. Nevertheless, new trial orders are not unusual, and the rule is firmly rooted in the policies embodied by Congress in 28 U.S.C. §1291, which support appeals only from, and of, final judgments, save in very limited circumstances.

        Moreover, the law recognizes these burdens and provides a procedure by which a party may move for entry of judgment in favor of the opposing party.  If his motion is granted, he may then appeal without enduring the second trial.  See United States V. Procter & Gamble Co., 356 U.S. 677 (1958) (entry of a final judgment in favor of party sought by opposing party allows the opposing party to appeal the adverse underlying rulings); Trevino-Barton v. Pittsburgh Nat'l Bank, 919 F.2d 874 (3d Cir. 1990) (same).  This procedure affords review of the order, even though the party appealing solicited the judgment.

> A party who is willing to gamble on review of the new trial order, however, may be able to win the right to appeal by soliciting entry of an adverse final judgment.  There is a cogent argument that the solicited judgment is final if the scope of review is limited to the order granting a new trial and affirmance of that order leads to affirmance of the judgment rather than remand for a new trial.

> Appeal is bought at the cost of wagering all
> on reversal of the new trial order, but this
> cost may seem small to a party who is unable
> to afford a new trial in any event.

15B Charles A. Wright et al., Federal Practice and Procedure §3915.5 (2d ed. 1992 & Supp. 1995).

Appellant states that he moved for entry of judgment on this basis, but the district court denied the motion. He did not attempt to appeal this order -- which would be rendered essentially unreviewable following a retrial -- under the collateral order doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949), and instead emphatically indicated to the court and opposing counsel that, he would indeed "put on a complete trial." Nonetheless, appellant refused to go forward on the day of trial, and the district court, not surprisingly, dismissed the case for failure to prosecute.

### III.

Appellant's refusal to try his case combined with counsel's statement at oral argument on appeal that appellant now will risk all on our decision, does not substitute for his obligation to obey proper orders and to follow proper procedure, and can neither nullify the otherwise proper dismissal, nor resuscitate his earlier verdict. I would hold that the district court's underlying orders are not reviewable after a dismissal for failure to prosecute unless and until appellant can successfully challenge the dismissal. Because the dismissal here is unassailed and unassailable, I would affirm the judgment of

33

the district court, and never reach the issue of whether the district court erred by ordering a new trial.