NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4536
_____

DONALD E. BOYD, Appellant

v.

STATE OF ARIZONA; MARICOPA COUNTY, AZ; MARICOPA COUNTY
PROSECUTORS OFFICE; MARICOPA COUNTY SHERIFF'S OFFICE; ARIZONA
DEPARTMENT OF PUBLIC SAFETY; STATE OF NEW JERSEY; BERGEN
COUNTY, NJ; BERGEN COUNTY PROSECUTOR'S OFFICE; MERCER COUNTY,
NJ; MERCER COUNTY PROSECUTOR'S OFFICE; CATHERINE LEISCH; JEANINE
SORRENTINO, individually and in her official capacity; KEVIN MARICLE,
individually and in his official capacity; SGT. D. HARVEY, individually and in his
official capacity; JOSEPH M. ARPAIO, individually and in his official capacity; DET.
M. WARD, individually and in his official capacity; DET. D. KELLER, individually and
in his official capacity; DET. S. ROBERTS, individually and in his official capacity;
OFC. ANDERSON, individually and in his official capacity; OFC. ENTEMAN,
individually and in his official capacity; DENNIS A. GARRETT, individually and in his
official capacity; COLLEEN K. PROFFITT, individually and in her official capacity; C.
SEARS, individually and in his official capacity; B. CLUFF, individually and in his
official capacity; S. POWERS, individually and in his official capacity; A. PENROSE,
individually and in his official capacity; K. DONALDSON, individually and in his
official capacity; D. ELY, individually and in his official capacity; SUSAN NARVESON,
individually and in her official capacity; MICHELLE GASPARIAN, individually and in
her official capacity; JOHN MOLINELLI, individually and in his official capacity;
ALAN LUSTMANN, individually and in his official capacity; DET. JAY BRAZOFSKY,
individually and in his official capacity; RICK TOSTO, individually and in his official
capacity

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 08-cv-04521)
District Judge:  Honorable William J. Martini

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 12, 2012
Before:  JORDAN, HARDIMAN and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed : March 20, 2012)
_____

OPINION
_____

PER CURIAM

Donald Boyd appeals from an adverse judgment of the United States District Court for the District of New Jersey.  Having carefully considered the appeal, we will vacate the order of the District Court entered November 4, 2010, and remand the matter for further proceedings.  We will affirm the judgment of the District Court in all other respects.

## I.  Background

Boyd is a prisoner in New Jersey.  Two events during his incarceration are relevant here.  First, according to Boyd's complaint, he "had filed and won two lawsuits against New Jersey county jail officials and agents."  Second, and subsequent to his success in court against his jailors, Boyd was extradited from New Jersey to Arizona to face charges of kidnapping and sexual assault related to an incident that occurred years earlier.  But Boyd had never been to Arizona, and "the charges were dismissed for lack of evidence and he was returned to New Jersey."

Boyd believed that he was extradited in retaliation for his successful lawsuits.  So, in September 2008, he filed this civil rights action under 42 U.S.C. § 1983 against more

than thirty named defendants—including law enforcement officials and offices, municipal entities and judicial officers—which, he claimed, all had a hand in his extradition and ancillary maltreatment. His allegations of harm included the following: "plaintiff's loss of wages [from prison employment] . . . ; he lost his ability to file additional briefs in his New Jersey criminal case; . . . and the facts of the Arizona case were submitted to New Jersey's newspapers and published." In addition to claiming a deprivation of his First Amendment rights, Boyd raised a civil conspiracy claim under 42 U.S.C. § 1985, and a variety of state law claims.

The District Court sua sponte screened Boyd's complaint under 28 U.S.C. § 1915 and dismissed his claims against the majority of the defendants. The District Court allowed Boyd's claims to proceed against a small group: Sergeant D. Harvey; K. Donaldson; D. Keller; M. Ward; Alan Lustmann; D. Ely; and Mercer County, New Jersey. Boyd's amended complaint was in general met with dispositive motions or answers from those remaining defendants. Notably, Mercer County filed an answer with cross-claims "against all Co-Defendants," including "Correctional Health Services, Inc., XYZ Corp., and Jane Does 1-2."

Boyd's amended complaint and subsequent collateral applications for relief were disposed of in a series of orders entered by the District Court in 2010: on January 26, the District Court granted Harvey's motion under Fed. R. Civ. P. 12(b)(2) to dismiss the amended complaint for lack of personal jurisdiction; on February 16, it granted the Rule

3

12(b)(2) motions of Donaldson and Keller; on March 24, Boyd stipulated to a dismissal from suit of Mercer County; on July 21, the District Court quashed Boyd's subpoena for DNA records from a prior conviction; on November 4, it granted Ward's Rule 12(b)(2) motion; and on November 8, it both granted Lustmann's motion under Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint for failure to state a claim, and dismissed Ely from the suit pursuant to Fed. R. Civ. P. 4(m)[1].  Boyd appealed.

## II. Appellate Jurisdiction

A December 10, 2010 letter from the Clerk of this Court advised the parties of a potential issue concerning our appellate jurisdiction.  The letter indicated that "the District Court Orders that you appealed may not have dismissed cross-claims filed in your District Court action," thus rendering the District Court's judgment 'non-final' for purposes of Fed. R. Civ. P. 54(b) and 28 U.S.C. § 1291.  The cross-claims referenced in the letter were those of Mercer County, and it was Mercer County's pending cross-claim against Lustmann in particular that appeared to be most problematic.[2]

---

1 "If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

2 Mercer County had filed its answer, with cross-claims "against all Co-Defendants," on August 28, 2009.  Thereafter, on March 26, 2010, the District Court approved a stipulated dismissal of Mercer County's cross-claims against Harvey, Donaldson and Keller.  Seemingly, that left cross-claims pending against Lustmann, Ward, and Ely.  But, as Ward noted in her joint response to the December 10, 2010 Clerk's letter, at the time Mercer County filed its answer Ward "had not yet appeared in the case because she had not been served," and "[b]y the time an agreement was made to avoid service . . ., the

Rule 54(b) provides, in pertinent part, as follows: "When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines [via Rule 54(b) order] that there is no just reason for delay." Accordingly, "[w]ithout a valid Rule 54(b) order, we do not ordinarily have appellate jurisdiction over a district court order that resolves fewer than all the claims of all the parties in a single action." Hill v. City of Scranton, 411 F.3d 118, 124 (3d Cir. 2005). "This is equally true whether the unresolved claim was asserted in the plaintiff's complaint, or was pleaded as a counterclaim, or a cross-claim." Aluminum Co. of Am. v. Beazer E., Inc., 124 F.3d 551, 557 (3d Cir. 1997) (internal citations omitted).

It has been more than one year since the District Court entered judgment on November 8, 2010. The District Court has not issued a Rule 54(b) order, and none of the parties has requested one, in order to dispose of Mercer County's apparently-pending cross-claim against Lustmann.[3]

---

District Court had already dismissed Appellant's action against Mercer County." In addition, there was no viable cross-claim against Ely because he was never a real party to the action. See Gomez v. Gov't of V.I., 882 F.2d 733, 736 (3d Cir. 1989) ("a named defendant who has not been served is not a 'party' within the meaning of Rule 54(b)"). Thus, only Mercer County's cross-claim against Lustmann was outstanding at the time the District Court entered its judgment.

[3] In addition to the December 10, 2010 letter from the Clerk of Court, our interest in the issue of appellate jurisdiction was made explicit to the parties by the July 6, 2011 order of the motions panel, through which the issue was referred to this merits panel and in which the parties were instructed to address in their briefs the following two questions: "(1)

In <u>Owens v. Aetna Life & Casualty Company</u>, 654 F.2d 218 (3d Cir. 1981), we noted that a defendant's outstanding cross-claim hindered the appealability of a judgment even where that cross-claim had been neutered by resolution of the plaintiff's suit in favor of the cross-claiming defendant. <u>See</u> <u>id.</u> at 220 n.2 ("We recognize that as a practical matter Aetna's pending cross-claim for contribution/ indemnity became groundless once Aetna's motion for summary judgment was granted. However, to read 'practicalities' into the already plain language of Rule 54(b) would only foster uncertainty in an area of the law that must remain clear"); <u>accord</u> <u>Fed. Sav. & Loan Ins. Corp. v. Huff</u>, 851 F.2d 316, 319 (10th Cir. 1988) (en banc). Thus, under <u>Owens</u>, it might appear that we lack appellate jurisdiction in this matter.

In his response brief, Lustmann contends that we do have appellate jurisdiction because Mercer County has effectively abandoned its cross-claim. [4] Lustmann cites our decision in <u>Bethel v. McAllister Brothers</u>, 81 F.3d 376 (3d Cir. 1996), in which we observed that "otherwise non-appealable orders may become appealable where circumstances foreclose the possibility of piecemeal litigation." <u>Id.</u> at 381. For instance, a 'non-final' order may achieve appealability "where a plaintiff voluntarily and finally

whether a party may waive on appeal a still-pending cross-claim; and (2) if so, whether Mercer County, New Jersey waives on appeal its still pending cross-claim(s)." Given the explicitness of our interest, it would have been prudent for one or all of the parties to seek, in an abundance of caution, a Rule 54(b) order from the District Court.

4 In their response brief, Harvey, Donaldson, Keller and Ward adopt in full Lustmann's arguments concerning appellate jurisdiction.

abandons the [outstanding] claims in the litigation." Id. at 382; see also Beazer E., Inc., 124 F.3d at 559 (district court's order is appealable "where (1) it finally resolves all issues which any party before it wishes it to resolve, (2) it complies with the Rule 58 requirements for entry of judgment, and is clearly intended by the court to be its final act in the proceeding, but (3) it leaves other issues relevant to the controversy–and, therefore, certain of the parties' claims–still to be resolved through a separate arbitration or mediation process agreed to by the parties") (citation omitted).

We are persuaded that Mercer County abandoned its cross-claim against Lustmann. Therefore, we conclude that the District Court's judgment is 'final' and appealable. We reach this conclusion based on the following: (1) the November 8, 2010 orders of the District Court comply with Rule 58, see Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 201 n.10 (3d Cir. 2004), and are clearly intended to be the final acts in the proceedings below; (2) it has been more than one year since the entry of judgment, and Mercer County has not pursued in the District Court its cross-claim against Lustmann—nor could it, since there is at present no judgment for which Mercer County might seek contribution or indemnification; (3) on appeal, Mercer County has declined to enter an appearance and has declined to file a response brief, despite presumed receipt of the order of the motions panel implying that it should; and (4) our observation that the cross-claim section of Mercer County's answer to Boyd's amended complaint was likely

7

a haphazard cut-and-paste from an answer in a different, unrelated case.[5] Based on the foregoing, we exercise appellate jurisdiction under 28 U.S.C. § 1291.

### III.  The District Court's Jurisdiction

The arguments in Boyd's opening brief challenge only three of the District Court's orders:  the January 26, 2010 order granting Harvey's Rule 12(b)(2) motion; the February 16, 2010 order granting the Rule 12(b)(2) motions of Donaldson and Keller; and the November 4, 2010 order granting Ward's Rule 12(b)(2) motion.

### A.

We review de novo the District Court's rulings that it lacks personal jurisdiction over Harvey, Donaldson, Keller and Ward.  Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155 (3d Cir. 2010).  Boyd shoulders the burden of demonstrating facts that establish personal jurisdiction.  Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).  But because we are reviewing orders granting Rule 12(b)(2) motions, and because the District Court did not hold an evidentiary hearing, Boyd "needed only [to] establish a prima facie case of personal jurisdiction."  D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citation omitted).  In determining whether Boyd had made out his prima facie case, the District Court was required to accept the allegations in his amended complaint as true, and was to construe any disputed facts in Boyd's favor.  Metcalfe, 566 F.3d at 330.

---

5 Our observation stems in part from Mercer County's reference to "Correctional Health

The defendants named in Boyd's amended complaint were residents of either Arizona or New Jersey. Harvey, Donaldson, Keller and Ward are all residents of Arizona. Boyd, a resident of New Jersey, filed his complaint in that state. The federal district courts in New Jersey may assert personal jurisdiction over a nonresident only to the extent authorized by state law. Eurofins, 623 F.3d at 155. We have recognized that "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (citation omitted). In keeping with "traditional notions of fair play and substantial justice," J. McIntyre Mach., Ltd. v. Nicastro, --- U.S. ---, 131 S. Ct. 2780, 2787 (2011) (citation and internal quotations omitted), due process permits that "parties who have constitutionally sufficient minimum contacts with New Jersey are subject to suit there." Miller Yacht Sales, 384 F.3d at 96 (internal quotations omitted).

Two brands of personal jurisdiction, viz., "minimum contacts," adhere to those due process principles. The first brand—general jurisdiction—exists "when a defendant has maintained systematic and continuous contacts with the forum state." Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008). And the second brand—specific jurisdiction—exists "when the claim arises from or relates to conduct purposely directed at the forum state." Id.; see also Asahi Metal Indus., Ltd. v. Superior Court of California, Solano Cnty., 480 U.S. 102, 109 (1987) ("minimum contacts must have a basis in some

Services," an entity not named in Boyd's amended complaint.

act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws") (internal quotations and citation omitted). With those legal precepts in mind, we turn to the allegations in Boyd's amended complaint.

B.

At the time of Boyd's extradition to Arizona, Harvey was a sergeant with the Maricopa County Sheriff's Office. Ward and Keller were detectives, and Donaldson was an investigator, within that same office. Boyd alleged that all four were in possession of information and evidence that would have excluded him as a viable suspect in the sexual assault for which he was indicted and then extradited ("Crime #1"), yet they pursued him as a suspect anyway.

Specifically, Donaldson "matched a latent finger print from the driver's door of [the vehicle of a victim of a similar sexual assault] ("Crime #2) with fingerprints in the AFIS system belonging to a subject identified as Barry G. Ammons, Jr." The victims of Crime #1 and Crime #2 assisted in the production of facial composite sketches of their assailants. Both sketches "matched Mr. Ammons," and later both of the victims "picked Ammons's photograph [out of an array made by police] as being the photograph of the man who kidnapped and assaulted them." Ammons was convicted of Crime #2 "and in 1997 was sentenced to 40.75 years in prison," but "was not prosecuted" for Crime #1.

Six years later, Boyd became the prime suspect relative to Crime #1. Ward

10

prepared a police report, which was "reviewed by defendant D. Harvey," stating that "based on information received from . . . the Bergen County Prosecutor's Office . . . a photographic lineup [that included Boyd] was prepared . . . [and] presented to [the victim of Crime #1]. [She] picked the photograph showing Donald Boyd, stating that he looked familiar. When asked what looked familiar, she stated the eyes." Ward testified to the veracity of her report in Maricopa County grand jury proceedings. Boyd alleges that the photo selected from the lineup was in fact not of him but of some "unknown male."

In 2004, Keller and Ward "traveled from Arizona to Hudson County Correctional Facility in Newark, New Jersey where [Boyd] was being held on an unrelated matter." They collected DNA samples from Boyd and later compared the results with DNA collected from the scene of Crime #1. The DNA samples did not match. Nevertheless, Boyd was indicted for Crime #1 and in 2007 was extradited to Arizona to face charges of kidnapping and sexual assault. "On March 12, 2008, the [trial court] dismissed the indictment" due to a lack of evidence.

Boyd alleged that, prior to his extradition hearing in New Jersey, Harvey, Ward, Keller, Donaldson and others "conspired . . . to concoct a story that [Boyd's] DNA match[ed] samples from the crime scene, and that a booking photograph and finger print sheet from an unrelated arrest from 1995 in Hudson County, New Jersey, were both taken" from an arrest of Boyd in Arizona. Boyd alleged that an affidavit provided by Ward at the extradition hearing was "fabricated," and that Ward knew "full well that

11

[Boyd] did not commit" Crime #1. Following extradition, Harvey, Ward, Keller and Donaldson failed to arrange for "necessary medical treatment" for Boyd. In addition, they arranged for Boyd to be confined in administrative segregation at the Maricopa County Jail.

In his opening brief, Boyd essentially concedes that the District Court could not have exercised general jurisdiction over Harvey, Donaldson, Keller, or Ward. Boyd argues, though, that the allegations in his amended complaint establish a basis for specific jurisdiction: "the various activities of defendants Harvey, Keller, Ward, and Donaldson . . . were directed at Plaintiff [and] confer jurisdiction in New Jersey." We are constrained to agree that the District Court did err in granting Ward's Rule 12(b)(2) motion.[6]

The District Court characterized Boyd's allegations against Ward as "sparse and vague." We disagree with that characterization. Boyd clearly alleged that Ward constructed a police report based on information received from New Jersey prosecutors, that Ward put together and presented the photo array used by the victim of Crime #1 to identify Boyd, that Ward traveled to New Jersey to procure from Boyd a DNA sample, that Ward testified before the Arizona grand jury that produced the indictment, that Ward prepared an affidavit in support of Boyd's extradition from New Jersey to Arizona, and that Ward entered into a conspiratorial agreement to provide the New Jersey extradition

---

6 That was the District Court's only error, though; the November 4, 2010 order and its accompanying opinion notwithstanding, we wholeheartedly agree with the District Court's many rulings in this case.

12

court with false or misleading information. We conclude that Boyd's allegations are sufficient to survive a Rule 12(b)(2) motion to dismiss.[7]

## IV. Conclusion

For the reasons given in this opinion, the judgment of the District Court is in large part affirmed. However, we will vacate the District Court's November 4, 2010 order granting the Rule 12(b)(2) motion to dismiss of Ward, and remand for further proceedings consistent with this opinion. Even though we conclude that the District Court erred in granting Ward's motion to dismiss, our ruling does not constrain the District Court's ability to dismiss for lack of personal jurisdiction after discovery, and we express no opinion concerning the merits of Boyd's claims against Ward.

---

7 The District Court determined that even if Ward's "conduct could somehow be construed to constitute purposeful availment of the privilege of conducting activity in New Jersey . . . none of [Boyd's] claims have anything to do with [Ward's] collection of the [DNA] samples." The District Court misunderstands the thrust of Boyd's suit, which posits, among other things, that government officials took various actions in order to extradite Boyd to Arizona as part of a retaliatory scheme and despite actual or constructive knowledge that Boyd was not a legitimate suspect relative to Crime #1. The District Court also determined that "even if minimum contacts somehow could be found to exist . . . the Court still could not validly exercise personal jurisdiction over Ward . . . [because] it would not be fair or just to hale Ward into court in New Jersey." We must disagree. We observe that, while by no means a certainty, future litigation in the forum state is at least foreseeable for the defendant that facilitates an individual's extradition—over persistent objection—from the forum state in order for that individual to face an indictment in the defendant's state. Cf. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (foreseeability in the personal jurisdiction context means that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there").

13