

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-29-2008

# Secretary Labor v. Roy's Constr Inc

Precedential or Non-Precedential: Precedential

Docket No. 06-3577

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Secretary Labor v. Roy's Constr Inc" (2008). *2008 Decisions.* Paper 1485.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1485

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-3577

ELAINE L. CHAO,
SECRETARY OF LABOR,

Petitioner

v.

ROY'S CONSTRUCTION, INC.;
and
OCCUPATIONAL SAFETY AND HEALTH REVIEW
COMMISSION,

Respondents

On Petition for Review of a Final Order of the
Occupational Safety and Health Review Commission
OSHRC Docket No. 04-1409

Argued December 10, 2007

Before: SMITH, NYGAARD, and ROTH, *Circuit Judges*.

(Filed: February 29, 2008)

Counsel:

Ronald J. Gottlieb (argued)
Scott Glabman
U.S. Department of Labor
Office of the Solicitor
Rm. S4004
200 Constitution Avenue, N.W.
Washington, D.C. 20210

*Counsel for Petitioner*

Charles S. Russell, Jr. (argued)
Moore, Dodson & Russell, P.C.
P.O. Box 310, 5035 Norre Gade
Carlotte Amalie, St. Thomas, V.I. 00804

*Counsel for Respondent, Roy's Construction, Inc.*

---

OPINION OF THE COURT

---

SMITH, *Circuit Judge*.

The Secretary of Labor ("Secretary") petitions for review of a final order of the Occupational Safety and Health Review Commission ("Commission"). The Commission's order affirmed the order of an Administrative Law Judge ("ALJ") vacating citations that the Secretary had issued to Roy's Construction, Inc. ("Roy's"). For the reasons set forth below, we will affirm the Commission's order.

I.

In December 2003, a representative of the Occupational Safety and Health Administration ("OSHA") inspected the Charles Harwood Medical Complex project, one of Roy's Construction's work sites in the Virgin Islands. As a result of this inspection, on April 15, 2004 OSHA mailed citations to Roy's alleging violations of OSHA safety standards at the site and proposing total penalties of $40,600.00. On April 17, someone signed for the citations on Roy's behalf; a Roy's office administrator later testified before the ALJ that the signer was not a Roy's employee but rather an employee of a private mail company used by Roy's. Under Section 10(a) of the

3

Occupational Safety and Health Act of 1970 ("OSH Act"), an employer has fifteen working days from receipt of a citation and assessment of penalty to notify the Secretary of its intent to contest them. 29 U.S.C. § 659(a) (2000). If the employer has not provided such notice within fifteen working days, the proposed citation and assessment "shall be deemed a final order of the Commission and not subject to review by any court or agency." *Id.* Roy's did not notify OSHA of its intent to contest the citations within the statutory fifteen-working-day period, which expired on May 7, 2004. Accordingly, in June 2004 OSHA sent a letter to Roy's requesting payment of the penalties plus interest. Roy's attempted to reopen discussion of the citations with OSHA by telephone and eventually received a reply that the citations were final and that the only recourse available was an appeal to the Commission. In August 2004, OSHA sent a debt collection letter to Roy's. Subsequently, Roy's sent letters to OSHA (on August 17) and the Commission (on August 23) announcing its intent to contest the citations.

The Secretary moved before the Commission's ALJ to dismiss Roy's challenge to the citations as untimely. After holding an evidentiary hearing on April 13, 2005, the ALJ issued a Decision and Order on July 5, 2005 denying the Secretary's motion to dismiss. The ALJ invoked Federal Rule of Civil Procedure 60(b), which states that a court may relieve a party from a final judgment or order resulting from, *inter alia*,

4

"excusable neglect."[1]  *See* Rule 60(b)(1).  In *George Harms Construction Co. v. Chao*, 371 F.3d 156 (3d Cir. 2004), we noted that the relevant factors for evaluating an "excusable neglect" motion include "the danger of prejudice . . . , the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *See id.* at 163–64 (quoting *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)).  The ALJ concluded that excusing the lateness of Roy's notice of contest ("NOC") would not prejudice the Secretary (who had also missed deadlines prior to the ALJ hearing)[2] and that Roy's had

---

[1] In *George Harms Construction Co. v. Chao*, 371 F.3d 156 (3d Cir. 2004), we held that the Commission and its ALJs have jurisdiction, through invocation of the excusable neglect standard of Rule 60(b)(1), to entertain late notices of contest to citations that have become "final" under OSH Act § 10(a).  *Id.* at 160–63.  In doing so, we reaffirmed our earlier holding in *J.I. Hass Co. v. OSHRC*, 648 F.2d 190 (3d Cir. 1981), and declined to follow the Second Circuit's contrary holding in *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219 (2d Cir. 2002).

[2] Prior to the hearing, the Secretary had apparently missed a deadline to file a complaint, which prompted the ALJ to order the Secretary to show cause by October 31, 2004 as to why the citations should not be vacated for failure to file a complaint. The Secretary missed the October 31 deadline to show cause,

5

acted in good faith by abating the violations and attempting to ensure future compliance. He accepted Roy's explanation that part of its delay was the result of the company's move to a new office.[3] Therefore, the ALJ granted Rule 60(b) relief to Roy's on "excusable neglect" grounds and ordered the Secretary to file a complaint regarding the merits of the citations within twenty days. (Subsequently, at the Secretary's request, the ALJ

_____

but on November 8 filed a motion for an extension of time to file a complaint. The ALJ granted the extension on November 30 and set December 8 as the new deadline for the Secretary's complaint. The Secretary filed her complaint on December 7, 2004.

[3] The ALJ decided that Roy's failure to file a timely NOC before mid-June was the result of "excusable neglect." He found that Roy's delay after mid-June was "not due to excusable neglect" but that Roy's was "nonetheless entitled to Rule 60(b) relief" because of Roy's good faith and lack of prejudice to the Secretary. In context, the ALJ's meaning appears to be that although the "control" factor (i.e., Roy's lack of control over the delay due to the move) explains only part of the delay, good faith and lack of prejudice justify a finding of excusable neglect anyway for Rule 60(b) purposes. But the literal meaning of his words is that Rule 60(b) relief should be granted despite the absence of "excusable neglect," which makes little sense because "excusable neglect" was the only available ground for Rule 60(b) relief. As we explain below, however, our holding does not depend on the quality of the ALJ's explanation for granting relief.

extended the deadline for filing a complaint.)

Instead of filing a complaint, the Secretary sent a letter to the ALJ on August 24, 2005, informing him that "the Secretary hereby declines to file a Complaint to proceed on the merits because the Secretary believes that Your Honor's decision to allow defendant's [*sic*] to file a late notice of contest was clearly erroneous." The Secretary explained that her decision was intended "to preserve her right to appeal" and "is not characterized by bad faith, nor is it intended to prejudice the respondent in this case." The ALJ responded on September 8, 2005 by ordering the Secretary to show cause "why the contested citation(s) should not be vacated for failure to file a complaint." On September 16, the Secretary informed the ALJ again by letter that she would not file a complaint because she sought to "put this matter in a posture suitable for appeal." Consequently, on October 13 the ALJ vacated the citations.[4] On November 1, the Secretary petitioned the full Commission for discretionary review of the ALJ's decision granting Rule 60(b)(1) relief to Roy's and his subsequent order vacating the

---

[4] The Decision and Order vacating the citations states simply: "The Secretary failed to file a complaint in the instant case, as ordered. Accordingly, the citations issued to the Respondent on April 15, 2004 are VACATED in their entirety. SO ORDERED." Decision and Order, *Sec'y of Labor v. Roy's Constr., Inc.*, 2005 WL 4114103 (OSHRC Docket No. 04-1409, Comm'n ALJ Oct. 13, 2005).

citations. In her petition, the Secretary acknowledged that if the Commission ruled in Roy's favor regarding the propriety of Rule 60(b)(1) relief, the ALJ's vacatur order would stand and the Secretary would be precluded from litigating the citations on the merits.

The Commission issued its decision on June 1, 2006. Noting that ALJs have discretion under Commission Rule 101(a), 29 C.F.R. § 2200.101(a), to rule against "any party [who] has failed to plead or otherwise proceed as provided by these rules or as required by the Commission or Judge," the Commission found that the ALJ had not abused his discretion by vacating the citations. *See Sec'y of Labor v. Roy's Constr., Inc.*, 21 O.S.H. Cas. (BNA) 1557 (Rev. Comm'n 2006). The Commission acknowledged that, in past cases, it had reviewed Rule 60(b) rulings on their merits even after the Secretary had refused to file a complaint as ordered. *Id.* at 1558–59. Nonetheless, the Commission concluded that it had never "affirmatively" approved this procedure for obtaining review and that several past cases were distinguishable. *Id.* at 1559.

The Secretary has filed a petition with this Court, asking us to review the Commission's decision not to reach the merits of the Rule 60(b)(1) claim and to reverse the ALJ's grant of Rule 60(b)(1) relief. We have jurisdiction under 29 U.S.C. § 660(b) (2000), which allows "[a]ny person adversely affected or aggrieved by an order of the Commission" to obtain review "in any United States court of appeals for the circuit in which

8

the violation is alleged to have occurred or where the employer has its principal office."  The Secretary's petition presents two questions: 1) whether the Commission erred by affirming the ALJ's vacatur order solely on the ground that the Secretary failed to file a complaint, without reviewing the Secretary's argument that the ALJ improperly excused Roy's untimely NOC; 2) if we rule in the Secretary's favor on the first issue, whether Roy's filed its motion to excuse the untimeliness of its NOC "within a reasonable time" as required by Rule 60(b).  Because we rule against the Secretary on the first issue, we need not reach the second question.

II.

Before addressing the Secretary's contention that the Commission erred in its decision, we must address Roy's arguments that the Secretary is barred from attacking the ALJ's vacatur order at all.  We find these arguments to be without merit.

First, Roy's argues that the Secretary is barred from attacking the vacatur order as an unwarranted sanction because she did not raise this issue before the Commission.  Our reading of the Secretary's Brief before the Commission indicates otherwise.  The Secretary's Brief argued that the ALJ's vacatur order should be reversed, that the Commission should not treat the order as a sanction for misconduct, and that the order is reversible even though the ALJ "appropriately entered it" at the

9

Secretary's request. *See* Opening Brief of the Secretary at 23–27, *Sec'y of Labor v. Roy's Constr., Inc.*, 21 O.S.H. Cas. (BNA) 1557 (Rev. Comm'n 2006) (No. 04-1409). These are essentially the same arguments that the Secretary raises in the instant petition. Accordingly, we conclude that no basis exists for the claim that the Secretary failed to raise the necessary arguments before the Commission.

Second, Roy's contends that the Secretary is "judicially estopped" from arguing that the ALJ's vacatur order was "in any manner improper" because she made the allegedly inconsistent argument before the Commission that she had actively solicited the order. We reject Roy's contention because we do not view the Secretary's arguments as inconsistent. The Secretary's position all along has been that she sought the vacatur order solely as a means to obtain immediate review of the ALJ's Rule 60(b) decision. She has never taken the position that the order was justified as a sanction for any alleged misconduct, and she has always made clear that her ultimate goal was to obtain a reversal of the order. Moreover, even if we believed that the Secretary's positions have been inconsistent, we would not exercise our discretion to apply judicial estoppel because Roy's has not identified any other factors that justify application of this doctrine.[5]

---

[5] Although a court's decision to apply judicial estoppel is not subject to "inflexible prerequisites or an exhaustive formula," *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001), Supreme

Finally, Roy's claims that if we reach the merits of the ALJ's July 5, 2005 decision without setting aside the ALJ's October 13, 2005 vacatur order, we would be rendering an advisory opinion. Roy's argues further that we should not set aside the vacatur order because the Secretary is foreclosed from

Court and Third Circuit precedent demonstrate that some aggravating factor, and not mere inconsistency, is necessary for the application of judicial estoppel. The Supreme Court has identified several factors that "inform" a court's decision regarding whether to apply judicial estoppel. Not only must the court find that a party adopted inconsistent positions, but it should also consider whether the party succeeded in convincing a tribunal to accept its position and whether the party would derive an unfair advantage in the absence of estoppel. *Id.* at 750–51. Our Court's decisions instruct that judicial estoppel has three threshold requirements: first, the party in question must have adopted irreconcilably inconsistent positions; second, the party must have adopted these positions in "bad faith"; and third, there must be a showing that judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319–20 (3d Cir. 2003) (quoting *Montrose Med. Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779–80 (3d Cir. 2001)). We have also endorsed the view that judicial estoppel is an extreme remedy, to be used only "when the inconsistent positions are 'tantamount to a knowing misrepresentation to or even fraud on the court.'" *Krystal*, 337 F.3d at 324 (quoting *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 738 n.6 (8th Cir. 1987)).

11

challenging it and because it is based on grounds independent from the July 5 decision.  We have already rejected Roy's arguments that the Secretary is foreclosed from challenging the vacatur order.  As for Roy's contention that we should not set aside the vacatur order because it stands on independent grounds, this is essentially a restatement of the Commission's reasoning for affirming the vacatur order without considering the July 5 order.  Accordingly, our discussion of the Commission's decision in the next section will address this argument.

## III.

Under Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2000), a reviewing court shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  We apply this standard to our review of the Commission's decision.  The Secretary presents two arguments in support of her contention that the Commission acted in an arbitrary and capricious manner by affirming the ALJ's vacatur order without reviewing the ALJ's earlier Rule 60(b) decision.  First, she contends that the Commission's action arbitrarily and capriciously flouted the federal "merger rule," which provides that "interlocutory" orders issued before a final judgment are reviewable at the same time as the final judgment.  By reviewing the ALJ's final order vacating the citations without reviewing the interlocutory Rule 60(b) order, the Secretary argues, the Commission departed

12

from the merger rule without a reasoned explanation. Second, she contends that the Commission arbitrarily and capriciously departed from its previous practice of allowing the Secretary to obtain immediate review of an order by refusing to proceed and thereby inducing the ALJ to issue a final appealable order.

A.

The Secretary's first argument is that the Commission's action arbitrarily and capriciously flouted the federal merger rule. Under this rule, "prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996).[6] The Secretary argues that because federal appellate courts apply the merger rule to review a district court's interlocutory orders on appeal from a final order, the Commission is similarly obligated to apply the merger rule to review an ALJ's interlocutory orders on appeal from a final order. She argues that federal precedent on the merger rule required the Commission to apply the rule to review the

---

[6] Federal courts have recognized exceptions to the merger rule when reaching the interlocutory ruling would create piecemeal litigation, *see In re Westinghouse Sec. Litig.*, 90 F.3d at 706, or when a party obtained the final judgment through misconduct or bad faith tactics, *see Sere v. Bd. of Trs. of Univ. of Illinois*, 852 F.2d 285, 288 (7th Cir. 1988).

interlocutory Rule 60(b) order despite the fact that the final vacatur order was a response to her refusal to file a complaint. She analogizes her situation to *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376 (3d Cir. 1996), in which the plaintiff, who had obtained a favorable judgment at his original trial and objected to the district court's order requiring a retrial, refused to proceed at the retrial and thereby induced the district court to enter a final judgment against him for "failure to prosecute." *Id.* at 378–79. We held in *Bethel* that the plaintiff's "failure to prosecute" did not prevent our review of the retrial order, largely because the plaintiff had foreclosed the possibility of "piecemeal litigation" by renouncing any intention of proceeding at the retrial if he lost the appeal. *Id.* at 379–81.[7] Likewise, the Secretary argues, her failure to file a complaint did not prevent Commission review of the Rule 60(b) order because she had foreclosed the possibility of piecemeal litigation by declaring she would not litigate the citations on their merits. In short, the Secretary's argument is that when the Commission departs from

---

[7] In *Bethel*, we noted that the plaintiff's attorney explained during oral argument that "this was an all-or-nothing appeal in which appellant was seeking only the reinstatement of the judgment predicated on the verdict." 81 F.3d at 379. If we ruled in the plaintiff's favor regarding the propriety of the retrial, the litigation would end because the original judgment would stand. *Id.* at 379–80. If we ruled against the plaintiff, the litigation would end because the dismissal for failure to prosecute would stand. *Id.*

14

an allegedly indistinguishable federal precedent such as *Bethel* without a reasoned explanation, its action is arbitrary and capricious.

Whether *Bethel* and similar cases are distinguishable is beside the point, however, because nothing compels the Commission to follow federal merger rule precedents in the first place. The federal statute governing Commission procedure states simply: "The Commission is authorized to make such rules as are necessary for the orderly transaction of its proceedings. Unless the Commission has adopted a different rule, its proceedings shall be in accordance with the Federal Rules of Civil Procedure." 29 U.S.C. § 661(g) (2000). Similarly, Commission Rule 2(b) provides: "In the absence of a specific provision, procedure shall be in accordance with the Federal Rules of Civil Procedure." 29 C.F.R. § 2200.2(b) (2007). Nothing in the Commission Rules specifically addresses the merger rule, but the Federal Rules of Civil Procedure are also silent about it. Thus, we conclude that the Commission may depart from federal merger rule case law in its adjudications.

Moreover, although the Commission Rules do not address the merger rule directly, they arguably address it indirectly through Commission Rule 73, which governs interlocutory appeals. *See* 29 C.F.R. § 2200.73 (2007). In the federal judicial system, the merger rule is closely linked to the statutory final judgment rule. The final judgment rule provides

15

that, with a few limited exceptions,[8] federal appellate courts have jurisdiction to review only "final decisions" of federal district courts and not interlocutory ones. *See* 28 U.S.C. § 1291 (2000). By allowing appellate courts to review interlocutory rulings on appeal from the final judgment, the federal merger rule ensures that those rulings will not escape review. *See generally* 15A Charles Alan Wright, et al., *Federal Practice & Procedure* § 3905.1 (2d ed. 1992 & Supp. 2006). If federal appellate courts could routinely review interlocutory rulings prior to final judgment, they could be less generous in their application of the merger rule.

The Commission is more tolerant of interlocutory appeals than the federal court system. Under Commission Rule 73, the Commission has discretion to grant a petition for immediate interlocutory review of an ALJ's ruling if it "involves an important question of law or policy about which there is substantial ground for difference of opinion" and immediate review "may materially expedite the final disposition of the

---

[8] The most important exceptions are the statutory provisions for interlocutory appeals provided in 28 U.S.C. § 1292 (2000), and the "collateral order doctrine," established in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), and developed in many subsequent cases. *See generally* 16 Charles Alan Wright, et al., *Federal Practice & Procedure* § 3920 (2d ed. 1996) (providing an overview of exceptions to the final judgment rule).

16

proceedings," or if the challenged ruling might result in the release of allegedly privileged information. 29 C.F.R. § 2200.73 (2007). The only comparable provision for interlocutory appeals in federal courts is 28 U.S.C. § 1292(b), which permits an appellate court to grant immediate interlocutory review when a district judge states in writing that an interlocutory order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." *See* 28 U.S.C. § 1292(b) (2000). Although much of the language of § 1292(b) is similar to that of Commission Rule 73, the two provisions differ significantly because § 1292(b) allows an appellate court to grant interlocutory review only when a district judge grants permission, whereas Commission Rule 73 allows the Commission to grant interlocutory review without an ALJ's permission. In light of its greater discretion to hear interlocutory appeals, the Commission could reasonably conclude that the merger rule should have less force in appeals of an ALJ's final judgments, at least when those final judgments are directed against a party that refused to proceed and made no attempt to seek interlocutory review.[9] Thus, Commission Rule 73 bolsters

---

[9] The Secretary correctly notes that the Commission has indicated that interlocutory appeals are generally disfavored. *See Sec'y of Labor v. Nw. Conduit Corp.*, 18 O.S.H. Cas. (BNA) 2072, 2073 (Rev. Comm'n 2000) (quoting *Oneida Indian Nation v. County of Oneida*, 622 F.2d 624, 628 (2d Cir. 1980)).

17

our conclusion that the Commission is not bound by federal precedent regarding the merger rule.

The Secretary also suggests that the Commission announced in its own case law that it would follow federal precedent on the merger rule. She contends that in *LTV Steel Co.*, 13 O.S.H. Cas. (BNA) 1090 (Rev. Comm'n 1987), the Commission announced that it follows and expects its ALJs to follow the federal final judgment rule and policy against piecemeal appeals. Apparently, the Secretary's implicit argument is that these purported statements in *LTV Steel* are equivalent to endorsement of the merger rule and the related federal case law. First, we disagree with the Secretary that *LTV* adopts the final judgment rule. Nothing in *LTV* adopts this rule directly,[10] and the opinion even observes that the Commission may grant interlocutory review in a number of situations—in

But this does not change the fact that the Commission has discretion to permit interlocutory appeals in many situations in which federal appellate courts do not.

[10] Perhaps the Secretary sees traces of the final judgment rule in *LTV*'s statement that "[i]t will generally be more efficient for the judge to issue a single decision disposing of all issues so that the parties can seek Commission and court review of the entire case at one time and so that the entire record can be kept together." *See* 13 O.S.H. Cas. (BNA) at 1090–91. But nothing in this language actually forbids appeal of non-final judgments as 28 U.S.C. § 1291 does.

18

direct contrast to the federal final judgment rule's heavy presumption against interlocutory appeals. *See* 13 O.S.H. Cas. (BNA) at 1091 (citing 29 C.F.R. § 2200.73). Second, although we agree that *LTV* endorsed the federal policy against piecemeal appeals, we do not view that endorsement as equivalent to adoption of the merger rule. *LTV* endorses the policy against piecemeal appeals as "embodied in Rule 54(b) of the Federal Rules of Civil Procedure," which applies only to piecemeal appeals of *final* judgments related to a particular claim or party. *Id.* at 1090. Therefore, *LTV*'s endorsement of Rule 54(b) tells us nothing about the Commission's views on the appropriate manner in which to obtain review of a *non-final* ruling.[11] Accordingly, we conclude that *LTV* does not adopt federal case law or policy related to the merger rule.

Finally, we emphasize that the Commission's decision did not depart altogether from the merger rule. Instead, it declined to apply the merger rule in a situation where the Secretary obtained dismissal by declining to file a complaint.

---

[11] In *Bethel*, we indicated that "the federal policy against piecemeal appeals" is "codified in the final judgment rule of 28 U.S.C. § 1291." *See* 81 F.3d at 381. The facts of *LTV* and its explicit reference to Rule 54(b) make clear, however, that its embrace of the federal policy against piecemeal appeals is not equivalent to an embrace of the federal final judgment rule. Both § 1291 and Rule 54(b) help to prevent piecemeal appeals, but they apply in different situations.

Many federal courts have held that "interlocutory rulings do not merge into a judgment of dismissal for failure to prosecute, and are therefore unappealable." *See John's Insulation, Inc. v. L. Addison & Assocs., Inc.*, 156 F.3d 101, 105–07 (adopting this approach and citing cases from other circuits that have done the same). Even *Bethel* acknowledges that dismissal for failure to prosecute generally precludes application of the merger rule, but it carves out an exception for situations where there is no risk of piecemeal litigation. 81 F.3d at 379–81. The Secretary cites no evidence indicating that *Bethel*'s exception has won broad acceptance in other circuits, however.[12] Thus, even assuming *arguendo* that federal case law generally binds the Commission, we conclude that the state of federal precedent on this specific issue is not well-established enough to justify condemning the Commission's approach as arbitrary and capricious.

B.

The Secretary's second argument is that the Commission arbitrarily and capriciously departed from its *own* past precedent that permitted the Secretary to obtain immediate appeal of an ALJ's "interlocutory" order by refusing to proceed and thereby obtaining a dismissal. Specifically, she points to past

_____

[12] Even the *Bethel* panel was not unanimous in its conclusion that the trial court's earlier order was reviewable despite the plaintiff's refusal to prosecute. *See Bethel*, 81 F.3d at 385–89 (Nygaard, J., concurring).

20

Commission decisions, such as *Northwest Conduit Corp.*, 18 O.S.H. Cas. (BNA) 2072 (Rev. Comm'n 2000), *Jackson Assocs. of Nassau*, 16 O.S.H. Cas. (BNA) 1261 (Rev. Comm'n 1993), and *Byrd Produce Co.*, 16 O.S.H. Cas. (BNA) 1268 (Rev. Comm'n 1993), in which the Commission reviewed an ALJ's "interlocutory" decision to excuse a late notice of contest despite the ALJ's subsequent dismissal of the citations in response to the Secretary's failure to proceed. She also points out that the Commission has permitted immediate review of other types of orders, such as discovery orders, even after the Secretary refused to proceed. *See, e.g.*, *Donald Braasch Corp*, 17 O.S.H. Cas. (BNA) 2082 (Rev. Comm'n 1997). As we observed in *Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804 (3d Cir. 1985), "[i]t is settled that where an agency departs from established precedent without announcing a principled reason for such a reversal, its action is arbitrary . . . and an abuse of discretion . . . and should be reversed." *Id.* at 807 (citations omitted). Accordingly, we must conduct a two-part inquiry, determining first whether the Commission has in fact departed from past precedent, and second whether it has announced a "principled reason" for any departure. We conclude that although the Commission departed from its precedent, it provided a "principled reason" for its departure and therefore did not abuse its discretion or act arbitrarily and capriciously.

1.

We conclude that the Commission has departed from its

21

established precedent.  Below, we discuss the most significant cases cited by the Secretary to illustrate the extent to which the Commission's decision in the present case was a departure.

In *Jackson Assocs. of Nassau*, 16 O.S.H. Cas. (BNA) 1261, the Commission permitted the Secretary to obtain review by using the same method that it rejected in the present case. The defendant, Jackson, had not filed a notice of contest to OSHA citations within the statutory fifteen-working-day period. 16 O.S.H. Cas. (BNA) at 1262.  The ALJ invoked Rule 60(b) to excuse Jackson's untimely NOC and ordered the Secretary to file a complaint within thirty days.  *Id.*  When the Secretary did not file a complaint as ordered, the ALJ dismissed the citations and proposed penalties "for failure to file a complaint under Commission Rule 34."  *Id.*  The Commission reviewed the ALJ's grant of Rule 60(b) relief on the merits at the Secretary's request without explicitly commenting on whether the Secretary's failure to file a complaint was appropriate.[13]

The Commission decided *Byrd Produce Co.*, 16 O.S.H. Cas. (BNA) 1268 (Rev. Comm'n 1993), on the same day as *Jackson*.  As in *Jackson*, the ALJ invoked Rule 60(b) to excuse Byrd's late notice of contest to OSHA citations and ordered the

_____

[13] Ultimately, the Commission reversed the ALJ's decision in part and remanded a separate issue to the ALJ—making clear that "the citations must be reinstated and affirmed" if the ALJ ruled against Jackson on the remanded issue.  *Id.* at 1266.

Secretary to file a complaint. *See Byrd*, 16 O.S.H. Cas. (BNA) at 1268. The Secretary declined to file a complaint, requesting instead that the ALJ reconsider his ruling. *Id.* Upon reconsideration, the ALJ affirmed his Rule 60(b) ruling, declared the Secretary in default under Commission Rule 41 (now renumbered as Commission Rule 101) for failure to plead, and dismissed the citation and proposed penalties. *Id.* The Commission reversed the ALJ's Rule 60(b) decision without commenting on the Secretary's failure to plead, and declared that "the citations have become a final order of the Commission under section 10(a) of the Act." *Id.* at 1270.

In *Northwest Conduit Corp.*, 18 O.S.H. Cas. (BNA) 2072 (Rev. Comm'n 2000), in contrast to *Jackson* and *Byrd*, the Commission explicitly addressed the propriety of the Secretary's refusal to file a complaint in response to an ALJ's Rule 60(b) ruling. *See* 18 O.S.H. Cas. (BNA) at 2073–74. Although the Commission ultimately concluded that her refusal did not preclude review of the Rule 60(b) ruling given "the unusual circumstances of this case," its analysis suggested that it would not allow the Secretary to obtain review in this manner in all cases. *Id.* at 2074. Northwest Conduit Corporation ("Northwest") had filed its notice of contest to a citation one day late, and the ALJ excused Northwest's lateness under Rule 60(b).[14] *Id.* at 2073. The Secretary refused to file a complaint,

---

[14] The ALJ in *Northwest Conduit* was Judge Irving Sommer, the same ALJ that is involved in the instant case. *See* 18 O.S.H.

23

prompting the ALJ to vacate the citations. *Id.* The Commission then considered and affirmed the Rule 60(b) ruling without comment on the Secretary's refusal. *See Northwest Conduit Corp.*, 18 O.S.H. Cas. (BNA) 1948 (Rev. Comm'n 1999) (earlier decision). On remand, the ALJ initially ordered the Secretary to file a complaint within twenty days. 18 O.S.H. Cas. (BNA) 2072, 2073 (Rev. Comm'n 2000). After the Secretary filed her complaint, however, the ALJ changed his mind and dismissed the case altogether as a sanction for the Secretary's earlier refusal to file. *Id.* On appeal again, the Commission set aside the ALJ's second dismissal, citing its discretion to set aside sanctions under Commission Rule 41(b) (now numbered as Commission Rule 101(b)). *Id.* The Commission noted that the Secretary would not have been able to pursue an interlocutory appeal of the Rule 60(b) order under Commission Rule 73 due to the lack of a quorum on the Commission at that particular time, and it also observed that interlocutory appeals are generally discouraged. *Id.* The one dissenting Commissioner would have upheld the ALJ's sanctions because the Secretary does not "enjoy any special privilege to disregard a judge's order." *Id.* at 2075 (Weisberg, J., dissenting). The dissent distinguished *Jackson* on the ground that the employer in that case had not raised the Secretary's refusal to file a complaint. *Id.* at 2076 (Weisberg, J., dissenting).

2.

---

Cas. (BNA) at 2073.

24

Having established that the Commission has excused the Secretary's refusal to file a complaint in several past cases involving Rule 60(b) orders, we now turn to the question of whether the Commission adequately distinguished these cases or articulated principled reasons for departing from them. If not, we must deem its decision to be arbitrary and capricious. Although we think that the Commission certainly could have provided better explanations for its decision not to follow these cases, we conclude that they are sufficient to escape classification as arbitrary and capricious.

Of the cases discussed above, the only one that the Commission discusses in depth in its opinion is *Northwest Conduit*. The Commission distinguished *Northwest Conduit* with the following statements:

> While the Commission in [*Northwest Conduit*] set aside the judge's vacatur order, excusing the Secretary's failure to file a complaint, the case before us differs from *Northwest Conduit* in two key respects. First, in *Northwest Conduit*, the Secretary could not have successfully petitioned for interlocutory review under Commission Rule 73, 29 C.F.R. § 2200.73, because there was only one Commissioner when the judge ordered the Secretary to file a complaint. . . . Here, the Secretary could have petitioned for such review because there were two Commissioners at the relevant time. Second, in contrast to *Northwest*

25

*Conduit*, the Secretary has foreclosed the possibility of litigating the merits of this case: if we were to reach the Rule 60(b) issue and decide in favor of the Secretary, the NOC would be dismissed and Roy's Construction would be required to pay the penalty without the benefit of a hearing on the merits; if, upon reaching the Rule 60(b) issue, we were to decide in favor of Roy's Construction, there would still be no such hearing because the Secretary has waived her right to litigate the merits of the case. In addition to these factual distinctions, we emphasize that the Commission in *Northwest Conduit* warned the Secretary that "'any party who fails to comply with a Commission order, does so at its peril.'" . . . In light of this warning and the two distinguishing factors, we find that *Northwest Conduit* does not compel us to set aside the vacatur order.

*Sec'y of Labor v. Roy's Constr., Inc.*, 21 O.S.H. Cas. 1557, 1559 (Rev. Comm'n 2006) (citations omitted).

We agree with the Commission that a valid distinction of the present case from *Northwest Conduit* is that interlocutory review was not readily available in the latter case. The specific reference in the *Northwest Conduit* opinion to the absence of the necessary quorum suggested that later decisions may consider this factor when deciding what method the Secretary should use to appeal an unfavorable order. That said, we also recognize that *Northwest Conduit* cited a second factor in support of its

26

conclusion that the Secretary was not obliged to seek interlocutory review: that interlocutory review is generally disfavored. *See Northwest Conduit*, 18 O.S.H. Cas. at 2073–74. The Commission's opinion in the present case ignores this factor, which would be just as applicable in the present case as it was in *Northwest Conduit*. Nonetheless, it is possible to read *Northwest* to say that the Commission's disfavor of interlocutory review is not, by itself, enough to absolve the Secretary of a responsibility to seek it rather than refuse to file a complaint. Arguably, *Northwest* treated the lack of a quorum, and not the allegedly disfavored status of interlocutory review, as the dispositive issue. This reading of *Northwest* is plausible enough to save the Commission's distinction from arbitrary and capricious status.

Although the existence of interlocutory review is by itself an adequate reason for the Commission to treat the Secretary's refusal to file a complaint differently here than in *Northwest*, the Commission's second factual distinction of *Northwest* provides additional support for its decision. In *Northwest*, the Commission had already affirmed the ALJ's Rule 60(b) order, so the only obstacle to a hearing on the merits was the ALJ's belated decision to punish the Secretary for her initial refusal to file a complaint. In the instant case, because the Secretary had renounced any intention of proceeding on the merits if she successfully challenged the Rule 60(b) order, no hearing on the merits would occur even if the Commission excused the Secretary's failure to file a complaint and reached the Rule 60(b) issue. In *Trinity Industries, Inc.*, 15 O.S.H. Cas. (BNA) 1579 (Rev. Comm'n 1992), the Commission recognized the need to balance "the Commission's obligation to enforce its

27

orders" with "the principle that the public interest requires that cases be decided on their merits." 15 O.S.H. Cas. (BNA) at 1583. Whereas the desirability of review on the merits provided the *Northwest* Commission with a counterweight to the interest in punishing the Secretary's disobedience of the ALJ's orders, review on the merits cannot provide such a counterweight in the instant case.[15] As the Secretary points out, it is true that the Commission has adopted a policy against piecemeal appeals, *see LTV Steel*, 13 O.S.H. Cas. (BNA) at 1090, and that her decision to waive a hearing on the merits can be construed as an attempt to comply with this policy. But *LTV* never suggested that the policy against piecemeal appeals is so strong that it could mandate a decision to foreclose the option of litigating citations on their merits. Thus, the Commission's statement about a hearing on the merits is not an arbitrary and capricious distinction of *Northwest* from the present case.

Finally, the Commission in *Northwest* suggests that its holding was intended to be limited to the "unusual circumstances" of the case. *See* 18 O.S.H. Cas. (BNA) at 2074.

---

[15] We acknowledge that review on the merits would not be a foregone conclusion even if the Secretary had not renounced any intention of proceeding on the merits. Even if the Commission had excused the Secretary's failure to file a complaint, review on the merits would not have occurred if the Commission had reversed the ALJ's Rule 60(b) order. Nonetheless, it is possible to read the Commission's opinion as saying that it will require at least a possibility of a hearing on the merits before excusing the Secretary's disobedience.

28

Although it is true that, as the *Northwest* dissent asserts, the majority never explained "what these unusual circumstances may be," *id.* at 2075 n.1 (Weisberg, J., dissenting), this statement supports our conclusion that *Northwest* was not an unlimited endorsement of the Secretary's ability to obtain review by refusing to file a complaint. Rather, *Northwest* merely recognized that the Secretary may do so under some circumstances. It was not arbitrary and capricious for the Commission to decide that such circumstances do not exist in the present case.

The Commission provides a less convincing distinction of the pre-*Northwest* cases such as *Jackson* and *Byrd* that permitted the Secretary to obtain Commission review of an ALJ order after refusing to file a complaint. It does not mention *Byrd*, and all it says about *Jackson* is the following:

> Although these cases [*Northwest Conduit* and *Jackson*] demonstrate that the Commission has not always treated the Secretary's failure to file a complaint as a barrier to reaching the merits of the Rule 60(b) issue, the Commission has never affirmatively stated that the Secretary may refuse to file a complaint in order to obtain Commission review.
>
> Indeed, only *Northwest Conduit* was analyzed through the lens of Commission Rule 101(b).

21 O.S.H. Cas. at 1559 (footnote omitted). Thus, the Commission's only explicit distinctions of *Jackson* (and

29

implicitly *Byrd*) are that they did not "affirmatively" state that the Secretary used an appropriate means of obtaining review[16] and that they did not invoke Commission Rule 101(b) to determine whether to set aside the ALJ's vacatur order.[17]  We conclude, with some qualifications, that this is sufficient as a "reasoned explanation" for departing from the *Jackson* and *Byrd* precedents.  If *Jackson* or *Byrd* had provided reasoning for its decision to excuse the Secretary's refusal to file a complaint, then any "reasoned explanation" for departing from these precedents would, at the very least, need to explain why this reasoning should no longer control.  When there is *no* reasoning for the earlier decision, however, a brief explanation for the departure may be permissible.  Although it is a close question, we conclude that the Commission's explanation—that these earlier cases contained no affirmative statements approving the practice and did not analyze the issue using the Commission's own Rules—to be sufficiently "reasonable" so as not to be

---

[16] According to the dissenting judge in *Northwest Conduit*, *Jackson* did not address the Secretary's refusal to file a complaint because "[t]hat issue was not raised by the employer." *See Northwest Conduit*, 18 O.S.H. Cas. (BNA) at 2076 (Weisberg, J., dissenting).

[17] *Byrd* states that the ALJ had declared the Secretary in default for failure to plead under Commission Rule 41 (which is now Commission Rule 101).  *See Byrd*, 16 O.S.H. Cas. (BNA) at 1268.  *Byrd* did not, however, invoke Commission Rule 101(b) to "set aside" the ALJ's sanction and is therefore not meaningfully different from *Jackson* in this regard.

30

arbitrary and capricious.[18]

3.

A separate line of cases consists of those in which an ALJ dismisses citations after the Secretary refuses to comply with the ALJ's discovery order on the ground that the requested information is privileged. *Donald Braasch Corp.*, 17 O.S.H. Cas. (BNA) 2082 (Rev. Comm'n 1997), is an example of this type of case. The *Braasch* opinion held over a dissent[19] that despite the Secretary's disobedience and the ALJ's consequent sanction, the Commission should review the merits of the

---

[18] We note, however, that our decision might be different if the precedent in question were more firmly established. For example, if the Commission allowed the Secretary to obtain review in this manner on a regular basis, we might require a more detailed explanation for a reversal of course. The Secretary cites only a few cases in addition to *Jackson*, *Byrd*, and *Northwest Conduit*, suggesting that this situation arises relatively infrequently and that the precedent was not firmly established.

[19] The dissenting Commissioner relied largely on the fact that the Secretary had failed to pursue interlocutory review before flouting the ALJ's orders. *See* 17 O.S.H. Cas. (BNA) at 2087–88 (Montoya, J., dissenting). The majority conceded that pursuing interlocutory review may have been "the better practice," but held that the Secretary's decision not to do so was not contumacious. 17 O.S.H. Cas. (BNA) at 2086 & n7.

discovery order and lift the sanction if this order proved to be erroneous. *See* 17 O.S.H. Cas. at 2086–87. *Braasch* also noted that "failure to comply with an order is not, by itself, an indication of bad faith or contumacious conduct where the party's reason for refusing to comply has a substantial legal basis and its conduct did not indicate disrespect towards the Commission or the issuing judge." *Id.* at 2086. The Secretary argues that although *Braasch* involves a discovery order rather than a Rule 60(b) order, we should regard it as presenting essentially the same issue. In support of this claim, she cites a Tenth Circuit case stating that there is "no principled distinction between sanctions imposed for discovery violations and sanctions imposed for noncompliance with other orders." *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

The Commission's explanation for distinguishing discovery cases like *Braasch* is not extensive. Referring specifically to *Braasch*'s statement that failure to comply with an order is not itself contumacious, the Commission states simply that "[o]ur review of Commission precedent . . . indicates that this rule of law has only been applied to cases where a party has refused to comply with a discovery order, and is thus not applicable to the case before us." 21 O.S.H. Cas. (BNA) at 1558. Notwithstanding the Tenth Circuit's conclusion in *Mobley*, we conclude that the Commission does not act arbitrarily and capriciously by applying a different rule in discovery cases. In most cases regarding whether the Secretary's refusal to comply with a discovery order has a "substantial legal basis," the inquiry is whether the Commission's interest in obtaining information outweighs a recognized legal right to withhold the information. *See Braasch*,

32

17 O.S.H. Cas. (BNA) 2082 (Secretary cited an "informers' privilege" when refusing to comply); *St. Lawrence Food Corp.*, 21 O.S.H. Cas. (BNA) 1467 (Rev. Comm'n 2005) (Secretary cited the attorney-client and work product privileges); *Trinity Indus. Inc.*, 15 O.S.H. Cas. (BNA) 1579 (Rev. Comm'n 1992) (Secretary cited the employer's improper challenge to a search warrant). In contrast, the "substantial legal basis" for refusing to comply with the ALJ's order to prosecute in this case would be the invalidity of the Rule 60(b) ruling. Since Rule 60(b) rulings are discretionary, being based on an ALJ's determination of what constitutes "excusable neglect" and a "reasonable time," there is little risk that a Secretary's challenge to a Rule 60(b) ruling will implicate established legal rights. The worst that can happen if the Secretary proceeds after an erroneous Rule 60(b) ruling is that an employer will receive relief or a hearing that its delay should have foreclosed. In contrast, compliance with erroneous discovery orders could reveal privileged information and harm third parties (such as informers). Thus, we think that the discovery context is different enough, that those differences are generally understood, and that a thorough explanation from the Commission is unnecessary. *See Hall v. McLaughlin*, 864 F.2d 868, 873 (D.C.Cir. 1989) ("if the court itself finds the past decisions to involve materially different situations, the agency's burden of explanation about any alleged 'departures' is considerably less.").

IV.

Because we have found that the Commission's decision to uphold the ALJ's vacatur order without addressing the ALJ's Rule 60(b) order was not arbitrary, capricious, or an abuse of

33

discretion, we need not address the Secretary's argument that Roy's NOC was not filed "within a reasonable time" for Rule 60(b) purposes. We will affirm the judgment of the Commission.